Michelle Denais **TERWILLIGER**, as trustee for the heirs and next of kin of Patrick Denais, Decedent, Respondent,

v.

**HENNEPIN COUNTY, d/b/a Hennepin County Mental Health Center, et al., Petitioners, Appellants.**

No. CX–95–1872.

Supreme Court of Minnesota.

April 17, 1997.

Rehearing Denied May 27, 1997.

---

Mackenzie & Hallberg, P.A., Mark Hallberg, Minneapolis, for Respondent.

Michael O. Freeman, Hennepin County Attorney, Michael B. Miller, Sr. Assistant County Attorney, Minneapolis, for Appellants.

## OPINION

KEITH, Chief Justice.

This matter presents the question of whether defendants Hennepin County, doing business as the Hennepin County Mental Health Center, and its employee, Dr. Keith Horton, a psychiatrist, are entitled to either statutory or official immunity for alleged negligence in treating a depressed patient who ultimately committed suicide in his home. We affirm the court of appeals' determination that the defendants are not entitled to statutory immunity under Minn.Stat. § 466.03, subd. 6 (1996), and hold further that official immunity is likewise inapplicable.

The plaintiff, Michelle Denais Terwilliger, is the duly-appointed trustee for the heirs

and next-of-kin of the deceased, Patrick Denais. In 1993, Mr. Denais was 31 years old, was married, and had three children. He first became a patient of the Mental Health Center in February 1993, when he sought treatment for depression. He was assigned to Brian Morseth, a licensed social worker, with whom Mr. Denais met for counseling on approximately six occasions between his intake in February and his death in August 1993.

On July 20, 1993, after a phone conversation with Morseth, Mr. Denais came to the Crisis Intervention Center (part of the Mental Health Center) stating that he was experiencing increased depression, had thoughts of killing himself, and wanted to be hospitalized. He was seen and assessed by Jan Shackelford, an intervention center social worker who referred him to Dr. Robert Werner for an assessment of his need for hospitalization and prescription medications. Dr. Werner examined Mr. Denais that same day and noted that Mr. Denais had "fleeting" thoughts of suicide, but that he "feels responsible for family, has no specific plan or intention—feels he has good enough self control." Dr. Werner determined that Mr. Denais did not need to be hospitalized, and prescribed two medications for depression.

The following day, on July 21, 1993, Mr. Denais met with Morseth for counseling but had not yet started taking the medications prescribed by Dr. Werner. The next day, July 22, 1993, Mr. Denais met with and was evaluated by Dr. Keith Horton. During their meeting, Dr. Horton ascertained that Mr. Denais had not begun taking the prescribed medications and, after discussing this with Mr. Denais, re-prescribed the same medications. Dr. Horton also made an appointment to see Mr. Denais approximately one month later to determine how the medications were working. Dr. Horton noted in the medical records that he "understood" that Mr. Denais would continue to see Morseth at the Mental Health Center in the interim.

By the time Mr. Denais met with Morseth four days later on July 26, 1993, he had begun taking his medications, but was continuing to feel depressed and anxious. Mor-

seth noted, however, "no suicidal plan or intent reported." On August 3, 1993, Mr. Denais cancelled his appointment with Morseth and five days later hanged himself in the bedroom of his home.

Plaintiff, Mr. Denais' widow, commenced this action in February 1995, naming both the county (doing business as the Hennepin County Mental Health Center) and Dr. Horton as defendants. Her complaint alleges that Dr. Horton and the county—acting through its agents and employees—were negligent in providing mental health care and treatment to Mr. Denais. "[B]y way of example," the complaint offers three specific allegations of negligence:

A. Defendant Hennepin County failed to hospitalize Patrick Denais on occasions when it knew or should have known that Patrick Denais was profoundly depressed and suicidal;

B. Defendant Hennepin County, acting through its agent and employees, failed to properly monitor Patrick Denais' condition after he was placed on medications and failed to provide appropriate support of therapy and counseling to treat Patrick Denais' severe depression and suicide potential;

C. Defendants acted or failed to act in other inappropriate ways.

The defendants filed a motion to dismiss the complaint for failure to state a claim on the grounds that the defendants were entitled to statutory immunity for discretionary acts under Minn.Stat. § 466.03, subd. 6, and municipal hospital immunity under Minn. Stat. § 466.03, subd. 11. The trial court granted the defendants' motion based upon statutory immunity under Minn.Stat. § 466.03, subd. 6.

The court of appeals reversed, holding that "once the decision to treat has been made, the manner in which treatment is rendered is not absolutely immune from tort liability." *Terwilliger v. Hennepin County Mental Health Ctr.*, 542 N.W.2d 675, 681 (Minn.App. 1996). The court reasoned that while a "decision to provide mental health services to individuals, may be, at its broadest level, a policy-based decision, treatment itself does

not often involve policy considerations." *Id.* at 679.

We must first consider whether the Mental Health Center is protected by statutory immunity from the claims asserted. The statute at issue provides that a municipality is immune from liability for "[a]ny claim based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." Minn.Stat. § 466.03, subd. 6. The problem, of course, is whether the particular governmental act or acts at issue involve the exercise of discretion.

In answering this question, we are guided by prior cases interpreting the similar statutory language of the discretionary function exception in the State Tort Claims Act, Minn. Stat. § 3.736, subd. 3(b). *See Cairl v. State,* 323 N.W.2d 20, 22 (Minn.1982). In examining the extent of tort immunity preserved by the Act, we have explained,

> [T]he discretionary function exception [to the State's liability for torts] is designed to assure that the courts do not pass judgment on policy decisions entrusted to co-ordinate branches of government. The discretionary function exception thus addresses separation of powers concerns by preventing tort actions from becoming a vehicle for judicial interference with executive and legislative policymaking.
>
> * * * Planning level decisions are those involving questions of public policy, that is, the evaluation of factors such as the financial, political, economic, and social effects of a given plan or policy. Operational level decisions, on the other hand, involve decisions relating to the ordinary day-to-day operations of the government.
>
> * * * The question is not whether the State's conduct resulted in a condition posing an unreasonable risk of harm; it is whether the conduct consisted of planning or policymaking decisions (protected) or operational level decisions (unprotected).

*Holmquist v. State,* 425 N.W.2d 230, 231–32 (Minn.1988) (citations omitted). We have also observed that the legislature did not intend the discretionary function exception to swallow the general rule of allowing recovery for those injuries negligently inflicted in the

performance of government operations. *See Cairl,* 323 N.W.2d at 23. Accordingly, when "determining whether particular conduct is protected, we have interpreted the discretionary function exception narrowly and have focused on the purpose underlying [the statute]." *Holmquist,* 425 N.W.2d at 231; *see also Nusbaum v. County of Blue Earth,* 422 N.W.2d 713, 718–22 (Minn.1988); *Larson v. Independent Sch. Dist. No. 314,* 289 N.W.2d 112, 121 (Minn.1979).

■ Pointing to our decision in *Cairl,* 323 N.W.2d at 22–23, which concluded that the release of an individual held in a state mental health institution to a less restrictive environment is generally protected by statutory immunity, the county argues that the planning versus operational test does not and should not apply to treatment decisions regarding mentally ill patients.

We believe, however, that the county misapprehends the basis of the *Cairl* decision. There, this court recognized that the decision to release a mentally retarded and potentially dangerous juvenile for a Christmas home visit depended on public policy—the protection of the public and the need to reintegrate institutionalized patients into the community—as much as on the youth's physical and psychological needs. *Id.* at 23. At footnote 3, the *Cairl* court clearly pointed out that the threat of liability would impair the effective performance of the governmental act in question. The cost of liability would likely become the most important consideration in the implementation of public policy and would undermine the statewide policy of open door treatment designed to return the mentally ill to their communities, rather than maintaining custodial detention. *Id.* at 23 n. 3.

Hennepin County has established the defendant community health center to treat mentally ill patients. It has employed a professional staff to implement that policy by consulting with, counseling, and treating mentally ill patients. To do so, those professionals must review and assess each patient's complaints and medical history. Clearly, the professional decision whether to hospitalize a patient or to treat him or her by counsel or medication on an out-patient basis involves a

complex analysis of each patient's symptoms and needs. But these decisions do not amount to public policy decisions, although they must be viewed in the light of the modern public policy commitment to the least restrictive treatment of the mentally ill. Such day-to-day treatment decisions—despite the professional discretion involved in their making—are operational decisions that do not ordinarily fall within statutory immunity. Accordingly, statutory immunity under Minn.Stat. § 466.03, subd. 6, does not apply in this case.

■ The second issue raised by the defendants is whether the Mental Health Center and its employees are protected by common-law official immunity. Official immunity protects "a public official charged by law with duties which call for the exercise of his judgment or discretion" from personal liability for damages "unless he is guilty of a willful or malicious wrong." *Elwood v. County of Rice*, 423 N.W.2d 671, 677 (Minn. 1988) (citation omitted), *quoted in Pletan v. Gaines*, 494 N.W.2d 38, 40 (Minn.1992). If a public official is entitled to official immunity, his or her employer may be vicariously immune. *See Pletan*, 494 N.W.2d at 41–42.

■ Official immunity protects public officials from the fear of personal liability that might deter independent action and impair effective performance of their duties. *Elwood*, 423 N.W.2d at 677–78. The operational-level discretion involved in official immunity is different from the policymaking discretion involved in statutory immunity. *Holmquist*, 425 N.W.2d at 233 & n. 1. In the case of official immunity, the simple execution of a specific duty arising from fixed and specific facts is clearly not protected. *Elwood*, 423 N.W.2d at 677. However, the exercise of some degree of judgment or discretion will not necessarily confer immunity: "the crucial focus is upon the nature of the act." *Id.*

■ In the case before us, the challenged conduct of the Mental Health Center's employees does not implicate the concerns of official immunity. As the county recognizes, the decisions of its employees implemented a declared policy of the Mental Health Center to treat mentally ill patients. But contrary to the county's assertion, immunity is not triggered merely because a public employee is "engaged in a governmental program." Granted, the decision not to hospitalize Mr. Denais and to treat his condition by medication and periodic consultation required special knowledge and the exercise of professional judgment. But decisions of this kind—no matter how difficult and no matter how much professional judgment is required—do not involve the discretion protected by official immunity; they only implement Hennepin County's established public policy of providing treatment for its mentally ill citizens. *See Olson v. Ramsey County*, 509 N.W.2d 368, 371–72 (Minn.1993); *Larson*, 289 N.W.2d at 120. And unlike the policeman's split-second decision whether to engage in a high speed chase, *Pletan*, 494 N.W.2d at 41, Dr. Horton and the other professionals involved based their decisions not only on what they observed of Mr. Denais, but also on the patient's medical history and on consultations with Mr. Denais.

Moreover, the decisions of the mental health professionals in this case were based on the same elements and subject to the same risks as are the treatment decisions of psychiatrists and other mental health professionals engaged in the private practice of medicine. In prior cases we have not considered the reach of official immunity as applied to employees of a county medical facility. In light of the inequity the county's position could create, we conclude that extending official immunity to these circumstances is unwarranted. Stretching the scope of official immunity to this case would threaten to erect a shield against malpractice liability that is unavailable to private practitioners. If, for example, Dr. Horton could enjoy immunity for a decision not to recommend hospitalization of Mr. Denais, it is difficult to identify a logical stopping point. Nothing in our case law dictates that official immunity protects county doctors from every form of medical malpractice liability. Under these circumstances and for these reasons, official immunity is not available to Dr. Horton or to the employees of the Mental Health Center.

Therefore, the Center itself may not benefit from official immunity in this case.

Affirmed.

GARDEBRING and BLATZ, JJ, took no part in the consideration or decision of this case.