**John NORTON, as Trustee to the Heirs of Richard James Trautline, Jr., Respondent,**

v.

**COUNTY OF LE SUEUR, et al., Appellants.**

No. C8–96–2173.

Court of Appeals of Minnesota.

June 10, 1997.

Review Denied Aug. 5, 1997.

George R. Ramier, Patrick W. Michenfelder, Ramier, Murray & Michenfelder, P.A., Minneapolis, for Respondent.

William J. Everett, Jessica S. Ware, Greene Espel, P.L.L.P., Minneapolis, for Appellants.

Considered and decided by DAVIES, P.J., and NORTON and KALITOWSKI, JJ.

## OPINION

DAVIES, Judge.

The heirs of Richard James Trautline seek recovery against the County of Le Sueur and Sheriff Pat W. Smith (in his representative capacity) in a wrongful death action arising out of Trautline's suicide during his incarceration at the Le Sueur County Jail. The county and sheriff (county) challenge the trial court's partial denial of summary judgment. That denial preserved claims premised on failure to properly implement the county's suicide prevention procedures. The county contends that the discretionary immunity provision of Minn.Stat. § 466.03, subd. 6, protects it from liability for all claims. We agree and reverse the partial denial of summary judgment.

## FACTS

On May 15, 1995, the Le Sueur County Sheriff's Office received a report that Richard James Trautline, Jr., had contacted his wife in violation of an order for protection.

Investigator Thomas Doherty was informed that Trautline had threatened to go to his wife's residence and commit suicide. Doherty took Trautline into custody.

On the way to the Le Sueur County Jail, Trautline informed Doherty that he had no intention of committing suicide and that he was just trying to get back at his wife for obtaining a protection order. Trautline further advised Doherty that he had recently obtained a $20,000 loan to repair restorable cars, that he had much to live for, and that he would not take his life "over a woman." When Trautline was booked into the Le Sueur County Jail at 11:00 a.m., the booking officer noted that Trautline had threatened suicide earlier that day but now stated that he was not contemplating suicide.

Trautline received a medical referral to the Le Sueur County Mental Health Department for a suicide risk assessment. Mark S. Traxler, a mental health worker who regularly conducted suicide risk assessments for the county, examined Trautline at 2:30 p.m. Trautline consistently denied any intention of suicide and appeared to express feelings and concerns inconsistent with suicide. Trautline indicated active planning for his future, including obtaining a lawyer and arranging for bail. Traxler concluded that Trautline showed no indication of any suicidal ideation, let alone an active plan for suicide. Traxler decided that no further preventative action was necessary. Trautline also specifically declined Traxler's offer of extra precautions through psychiatric hospitalization.

A policy and procedure manual for the Le Sueur County Law Enforcement Center sets forth procedures for dealing with inmates in the jail who are at risk of suicide, but Trautline was, on his return to the jail, placed with the general prisoner population. He was left alone and unobserved in his cell from 6:40 p.m. until his cellmate returned to the cell at 9:23 p.m. and discovered that Trautline had hanged himself.

The county moved, on governmental immunity grounds, for summary judgment dismissing all claims. The county appeals the denial of summary judgment on the claims that were based on liability for failure to properly implement its suicide policy.

## ISSUE

Did the district court err in denying the county immunity from claims arising from its failure to implement the suicide prevention procedures specified for its jail?

## ANALYSIS

■ Denial of a defense motion for summary judgment based on governmental immunity is immediately appealable because immunity from suit is "effectively lost if a case is erroneously permitted to go to trial." *Anderson v. City of Hopkins*, 393 N.W.2d 363, 364 (Minn.1986). On conceded facts, whether an immunity defense applies is a question of law. *Elwood v. County of Rice*, 423 N.W.2d 671, 675 (Minn.1988). A reviewing court considers a question of law without deference to the decision of the district court. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn. 1984).

The legislature has waived traditional principles of governmental immunity, requiring the state and municipalities to pay compensation where a private person would be liable. *Holmquist v. State*, 425 N.W.2d 230, 231 (Minn.1988); *see also* 1963 Minn. Laws ch. 798, § .2 (eliminating immunity for municipalities); 1976 Minn. Laws ch. 331, § 33, subd. 1 (eliminating immunity of state). Certain exceptions to the liability rule exist, including the discretionary function exception. *Nusbaum v. County of Blue Earth*, 422 N.W.2d 713, 718 (Minn.1988). Discretionary function immunity, also known as statutory immunity, protects municipalities from liability for claims based on the "performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." Minn.Stat. § 466.03, subd. 6 (1996).

The purpose of [statutory immunity] is to preserve the separation of powers by protecting executive and legislative policy decisions from judicial review through tort actions.

*Killen v. Independent Sch. Dist.*, 547 N.W.2d 113, 116 (Minn.App.1996) (citing *Nusbaum*,

422 N.W.2d at 718), *review denied* (Minn. Aug. 6, 1996).

In determining whether statutory immunity applies, the critical question is whether the specific governmental conduct at issue involves the balancing of policy objectives. *Killen,* 547 N.W.2d at 116. "A protected planning level decision" involves public policy considerations "and the balancing of competing social, political, or economic considerations." *Id.* (citing *Pletan v. Gaines,* 494 N.W.2d 38, 43–44 (Minn.1992), and *Nusbaum,* 422 N.W.2d at 719–20). Unprotected operational or implementation decisions "involve the day-to-day workings of a governmental unit." *Id.* (citing *Holmquist,* 425 N.W.2d at 232). In addition to the balancing of complex factors, application of the discretionary immunity doctrine requires a determination that "exposing the municipality to tort liability would undermine public policy." *Vrieze v. New Century Homes, Inc.,* 542 N.W.2d 62, 66 (Minn.App.1996). Our analysis must, therefore, identify and focus on the precise governmental decisions being challenged.

Statutory immunity does not ordinarily attach to a health worker's decision involving professional judgment and discretion. *See Nusbaum,* 422 N.W.2d at 722 (statutory immunity not applicable to decisions involving merely professional or scientific judgment); *see also Terwilliger v. Hennepin County,* 561 N.W.2d 909, 913 (Minn.1997) (day-to-day treatment decisions not immune from tort liability).

The professional and scientific judgments of medical professionals employed by the government are protected, however, when the challenged decision involves balancing of financial, political, economic, and social considerations. And the Minnesota Supreme Court, recognizing that liberty interest decisions implicate significant policy-balancing considerations, has repeatedly held that the decision to release a mental patient from involuntary treatment is protected as a discretionary function. *Johnson v. State,* 553 N.W.2d 40, 46–47 (Minn.1996); *see also Cairl v. State,* 323 N.W.2d 20, 23–24 (Minn.1982) (decision to release dangerous youth protected because decision implicated various policy

considerations); *Papenhausen v. Schoen,* 268 N.W.2d 565, 571–72 (Minn.1978) (decision by members of parole board to medically parole mentally ill prisoner, who then raped a woman, was protected because it required "discretionary judgment"). In addition,

> "decisions regarding the placement of inmates and patients, and ***decisions regarding how much liberty to afford them,*** are protected policy decisions immune from suit under the doctrine of discretionary [statutory] immunity."

*Johnson,* 553 N.W.2d at 47 (alteration in original) (quoting *Koelln v. Nexus Residential Treatment Facility,* 494 N.W.2d 914, 919–20 (Minn.App.1993), *review denied* (Minn. Mar. 22, 1993)). Recently, the supreme court further broadened the applicability of statutory immunity, holding that an alleged failure to determine if a parolee had complied with the conditions of a parole agreement was a "protected discretionary decision regarding how much liberty to afford him." *Id.*

> A significant consideration in determining the applicability of [statutory] immunity is the extent to which the threat of liability would impair the effective performance of the governmental act complained of.

*Cairl,* 323 N.W.2d at 23 n. 3. Exposing individuals charged with release decisions to the threat of "tort litigation by after-the-fact review" would result in decisions unduly responsive to the cost of liability and would "undermine a statewide policy favoring open door treatment rather than custodial detention of the state's mentally ill." *Id.* at 23 & n. 3.

The county asserts that it is immunized for its decisions made in regard to interpretation and implementation of its suicide prevention policies. More importantly, the county contends that application of statutory immunity is essential in this case to avoid undermining the public policy interest in reducing the use of restrictive measures that negatively impact an inmate's liberty interests. The precise governmental decisions at issue are: (1) the mental health worker's (Traxler's) decision to recommend that no protective measures be taken to prevent

Trautline from committing suicide; and (2) the municipality's decision to follow Traxler's recommendation. We conclude that, because Trautline's liberty interests were implicated, these decisions are protected by statutory immunity.

## A. Traxler's Decision

Determining whether an inmate displays suicidal ideation is a complex task, obviously involving significant professional judgment. But the decision also requires substantial balancing of important policy considerations as to Trautline's liberty interests.

Had Traxler decided to recommend the suicide prevention measures set forth in the jail manual, Trautline's liberty would have been severely restricted. He would have been placed in a solitary observation cell, isolated from the other prisoners. In addition, Trautline would have been denied access to the "day room"; to opportunities for recreation, discourse, and contact with other inmates; and to a telephone to contact family members. To order Trautline hospitalized would have required confining him in a psychiatric facility against his will.

Because Traxler's decision involved weighing an inmate's liberty interests against the interest in protecting him from suicide, the county is entitled to statutory immunity.[1] By immunizing Trautline's decision, we ensure that the threat of liability does not result in decisions that are unduly restrictive of the liberty interest.

## B. Decision to Follow Traxler's Recommendations

Respondents contend that in this case application of the manual's suicide prevention procedures was mandated because Trautline's suicide threats, made earlier on the day of his death, evidenced suicidal ideation. Respondents argue that, regardless of what Traxler concluded regarding Trautline's mental state, the county did not have author-

ity to ignore other evidence of this suicidal ideation. We disagree. The manual does not set forth who is to determine whether an inmate suffers from suicidal ideation. The language in the manual does not prohibit the county from relying on the professional judgment of a mental health worker.[2] *See Johnson*, 553 N.W.2d at 48 (county entitled to immunity where manual did not prohibit conduct at issue).

■ The test for determining whether statutory immunity protects the conduct of the county is whether the challenged conduct involved a decision regarding how much liberty to afford an inmate or patient. *Id.* at 47. Decisions on how to implement policies related to liberty interest concerns are equally protected.

Because we hold that the county is protected by statutory immunity, we do not address the county's argument that official immunity also applies.

## DECISION

Statutory immunity protects the county from liability for the determination by a mental health professional that an inmate did not display suicidal ideation and for its planning-level policy decision to rely on the mental health professional's recommendations. Because the county is fully immunized from claims that it failed to implement applicable suicide protection procedures, we reverse the district court's partial denial of summary judgment.

**Reversed.**

NORTON, Judge (dissenting).

I respectfully dissent and would affirm the trial court's denial of summary judgment. Included in respondent's wrongful death action against the county is a claim that the jail staff were negligent in implementing the jail's suicidal inmate policy. In affirming summary judgment, the majority concludes that, because the jail staff's implementation

---

1. We note that Traxler was not in a *treating* relationship with Trautline, but rather was only conducting a suicide risk assessment.

2. Although recognizing that the manual indicated the appropriateness of a medical referral to

deal with potentially suicidal inmates, respondents maintain that the manual authorized such a referral simply for the benefit of the inmate's psychological health, not for the specific purpose of determining the existence of suicidal ideation.

of the suicidal inmate policy implicates Trautline's liberty interests, statutory immunity applies. I disagree.

The majority cites *Johnson v. State*, 553 N.W.2d 40 (Minn.1996), *Cairl v. State*, 323 N.W.2d 20 (Minn.1982), and *Papenhausen v. Schoen*, 268 N.W.2d 565 (Minn.1978), for the proposition that the decision to release a mental patient from involuntary treatment is a discretionary function because such a decision involves the inmate's liberty. Notably, these cases involve inmates being released into the community. Therefore, in these cases, the governmental subdivision had to balance the inmate's liberty interest in being free from incarceration against the public's interest in safety and protection. *See, e.g., Cairl*, 323 N.W.2d at 23. Trautline, however, was not being released into the community. Rather, he was being placed in prison, either in a supervised setting pursuant to the jail's suicide policy or in the regular prison population. Consequently, the above cases do not support the majority's decision here because, in determining the proper disposition for Trautline, Traxler was not balancing Trautline's liberty interest in being free from incarceration versus the public's interest in safety.

The legislature did not intend that the immunity exception swallow the general rule of recovery for negligent governmental operations. *Id.* With that in mind, the court must narrowly construe the immunity exception to liability and focus on its underlying purpose. *Holmquist v. State*, 425 N.W.2d 230, 231 (Minn.1988). The purpose of immunity is to shield from liability any decisions involving the evaluation and weighing of social, political, and economic considerations. *Id.* at 232. Thus, not all of a governmental subdivision's complex professional decisions invoke immunity.

For example, the Minnesota Supreme Court has recently held that the professional decision of whether a suicidal person should be hospitalized or treated as an outpatient is not a public policy decision protected by immunity. *Terwilliger v. Hennepin County*, 561 N.W.2d 909, 913 (Minn.1997). In *Terwilliger*, the court recognized that a professional's medical evaluation of whether to hospitalize a suicidal patient or treat as an outpatient does not involve balancing public policy interests such as public safety or the state's policy of open door treatment of the mentally ill. *See id.* at 912 (observing that, in *Cairl*, court was concerned with youth's mental illness and public safety). Rather, such treatment decisions are on the operational level. Likewise, in this case, Traxler's decision did not involve interests such as public safety or the state's policy of open door treatment of the mentally ill. The county has not shown that Trautline's alleged liberty interest is sufficient to overcome the general rule of liability for negligence. Shielding the county with immunity in this case, under the guise of an alleged liberty interest, runs counter to the legislature's intention that immunity not swallow the general rule of liability.

The majority also erroneously concludes that the suicidal inmate policy allowed jail staff to deviate from the policy's suicide prevention steps. Relying on *Johnson*, 553 N.W.2d at 48, the majority concludes that the jail staff acted within their discretion when implementing the policy because the policy does not set forth who is to determine if an inmate suffers from suicidal ideation and does not preclude the jail staff from relying on the professional judgment of a mental health worker. Contrary to the majority's assertion, the suicide policy does state who is to determine if an inmate suffers from suicidal ideation sufficient to trigger the prevention steps. The policy says, "if *anyone* * * * report[s] a suicidal tendency in an inmate" the inmate should be treated as at risk. (Emphasis added.)

Moreover, the majority errs by concluding that the suicidal inmate policy does not preclude the county from relying on the advice of a mental health worker. The majority does not fully address the rationale of *Johnson* when it states that the "county is entitled to immunity where manual did not prohibit conduct at issue." In *Johnson*, not only was the county's conduct not prohibited by the release agreement, but the county had a demonstrated practice or custom justifying their conduct. In this case, the record does not show that the jail staff had a custom or practice of deviating from the suicide preven-

tion steps based on the recommendation of a mental health professional. Therefore, a question of fact exists with respect to whether the jail staff properly implemented the policy.

There is no precedent for expanding the immunity exception to cover all governmental decisions that remotely implicate an alleged liberty interest. The jury should be allowed to determine whether the jail staff properly implemented the suicidal patient policy.