Timothy G. BAILEY, as trustee for the next-of-kin of Virginia Bailey, Respondent,

v.

CITY OF ST. PAUL, et al., Appellants.

No. A03–1277.

Court of Appeals of Minnesota.

May 3, 2004.

John F. Eisberg, Daniel A. O'Fallon, Brooke B. Tassoni, Robins, Kaplan, Miller & Ciresi, LLP, Minneapolis, MN, for respondent.

Manuel Cervantes, Saint Paul City Attorney, Eric D. Larson, Assistant City Attorney, St. Paul, MN, for appellants.

Brian H. Gaviglio, St. Paul, MN, for amicus curiae League of Minnesota Cities.

Considered and decided by WILLIS, Presiding Judge; KALITOWSKI, Judge; and WRIGHT, Judge.

## OPINION

WILLIS, Judge.

The trustee for the next-of-kin of a woman who died after receiving emergency medical care from a St. Paul Department of Fire and Safety Services ambulance crew sued the city for wrongful death, claiming that the ambulance crew negligently treated the woman. The city moved for summary judgment, arguing that the acts of the ambulance crew are subject to official immunity and, therefore, the city is protected by vicarious official immunity. The district court denied the motion, holding that the ambulance crew's acts were ministerial, rather than discretionary, and, therefore, official immunity does not apply. We reverse.

## FACTS

On December 18, 2000, 73–year–old Virginia Bailey collapsed while shoveling snow outside of her St. Paul home. Her son called 911 at 4:50 p.m., and, within minutes, an ambulance unit of the St. Paul Department of Fire and Safety Services arrived and found Bailey unconscious. The ambulance crew noticed that Bailey was not breathing properly and determined that she needed to be intubated. The crew put Bailey in the ambulance and on their first attempt to intubate her they inadvertently placed the tube in Bailey's esophagus rather than in her trachea. Observations that they made after their second attempt led them to believe that Bailey was properly intubated, and they departed for Regions Medical Center.

En route to the hospital, Bailey's condition worsened and she began to show signs of the presence of subcutaneous air. The ambulance arrived at the Regions emergency room at 5:16 p.m. Attempts by the Regions emergency-room staff to resuscitate Bailey were unsuccessful, and she was pronounced dead at 5:37 p.m. The results of an autopsy suggested that Bailey had been intubated in her esophagus rather than in her trachea, causing air to accumulate in her stomach, which contributed to her death.

Virginia Bailey's son, respondent Timothy Bailey, was appointed trustee for Virginia Bailey's next-of-kin. In September 2002, he brought a wrongful-death action against the City of St. Paul and its Fire and Safety Services Department (hereafter generally referred to collectively as "the city"). The suit alleges that the ambulance crew was negligent in (1) failing to recognize an incorrect intubation; (2) failing to properly intubate Virginia Bailey; and (3) failing to provide a safe airway for Virginia Bailey. The suit also alleges that the city is vicariously liable for the ambulance crew's negligence.

In June 2003, the city moved for summary judgment, claiming that the ambulance crew was engaged in discretionary conduct protected by official immunity and that the city, therefore, is protected by

vicarious official immunity. Respondent opposed the motion, arguing that official immunity does not apply to the negligent administration of medical care and that, because the Fire and Safety Services Department has a written protocol describing when and how an ambulance crew should intubate a patient, the conduct that respondent challenges was ministerial, rather than discretionary. The district court denied the city's motion, concluding that the ambulance crew's allegedly negligent acts were ministerial and that, therefore, official immunity does not apply to the crew and vicarious official immunity is not available to the city. The city appeals.

## ISSUE

Does official immunity apply to emergency medical care provided by government-employed ambulance crews in the course of their official duties?

## ANALYSIS

Summary judgment will be granted if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file show that there is no genuine issue as to any material fact and that either party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03. On appeal from summary judgment, this court must determine (1) whether there are any genuine issues of material fact, and (2) whether the district court erred in its application of the law. *City of Virginia v. Northland Office Props.*, 465 N.W.2d 424, 427 (Minn.App. 1991), *review denied* (Minn. Apr. 18, 1991). The question of whether official immunity applies may be appropriately resolved by summary judgment. *Reuter v. City of New Hope*, 449 N.W.2d 745, 751 (Minn. App.1990), *review denied* (Minn. Feb. 28, 1990).

The city argues that the district court erred by determining that official immunity does not apply to the conduct of its ambulance crew in providing emergency medical care for Virginia Bailey. The city contends that official immunity applies to the conduct of all public officials who are required to exercise discretion in carrying out their official duties and that it is particularly applicable in cases where public officials are responding to emergency situations. Whether official immunity applies is a question of law reviewed de novo. *Kari v. City of Maplewood*, 582 N.W.2d 921, 923 (Minn.1998).

A person is a public official if he or she performs governmental duties directly related to the public interest. *See Hirman v. Rogers*, 257 N.W.2d 563, 566 (Minn.1977). The doctrine of official immunity protects public officials from liability for discretionary actions taken in the course of their official duties. *Janklow v. Minn. Bd. of Examrs. for Nursing Home Admrs.*, 552 N.W.2d 711, 716 (Minn.1996). Official immunity exists "to protect public officials from the fear of personal liability that might deter independent action and impair effective performance of their duties." *S.L.D. v. Kranz*, 498 N.W.2d 47, 50 (Minn.App.1993) (quoting *Elwood v. Rice County*, 423 N.W.2d 671, 678 (Minn. 1988)) (citation omitted). Official immunity applies when the public official's conduct involves the exercise of discretion, but it does not protect ministerial acts or malicious conduct. *Kari*, 582 N.W.2d at 923. A discretionary act requires the exercise of individual judgment. *Id.* A ministerial act is "absolute, certain and imperative, involving merely execution of a specific duty arising from fixed and designated facts." *Rico v. State*, 472 N.W.2d 100, 107 (Minn. 1991). Generally, if official immunity applies to a public official's conduct, then vicarious official immunity will apply to the government employer. *Pletan v. Gaines*, 494 N.W.2d 38, 42 (Minn.1992).

Public officials responding to emergencies often face circumstances that, by their nature, require the exercise of discretion. Accordingly, Minnesota appellate courts have held that the doctrine of official immunity applies in a variety of circumstances where official duties require public officials to respond to emergencies. *See Kari,* 582 N.W.2d at 924 (ambulance driver responding to report of unconscious person); *Pletan,* 494 N.W.2d at 41 (police officer's decision to engage in high-speed pursuit of .criminal suspect); *Elwood v. Rice County,* 423 N.W.2d 671, 679 (Minn. 1988) (police officers responding to report of domestic dispute); *Frank's Livestock & Poultry Farm, Inc. v. City of Wells,* 431 N.W.2d 574, 578 (Minn.App.1988) (volunteer fire department responding to report of fire), *review denied* (Minn. Jan. 25, 1989). The city urges that the same considerations that warranted the application of the doctrine in earlier cases when public officials responded to emergency situations apply here.

■ Whether official immunity applies to a public official's conduct is a two-step inquiry. *Dokman v. County of Hennepin,* 637 N.W.2d 286, 296 (Minn.App.2001), *review denied* (Minn. Feb. 28, 2002). We must first determine whether the challenged conduct was discretionary or ministerial and then must determine whether the challenged conduct, even though of the type normally subject to official immunity, was malicious or willful and therefore not subject to the protections of official immunity. *Id.*

At issue here is the conduct of the ambulance crew in attempting to properly intubate Virginia Bailey. The district court concluded that the conduct was ministerial because the Department of Fire and Safety Services "had a set of protocols and guidelines that dictated intubation under certain circumstances, such that there

was very little discretion involved." The city argues that the district court erred because the ambulance crew was presented with an unconscious patient for whom they had no medical information other than what they could observe.. Therefore, the city argues, the crew was not presented with definite facts requiring a specific response and instead was required to assess a situation about which they had very limited knowledge and then to constantly reassess the situation and make instantaneous decisions based on the changing information available to them.

The district court's determination that the ambulance crew's conduct was not entitled to official immunity was based on its interpretation of an unpublished case of this court, *Tousignant v. St. Louis County,* No. C0–98–907 (Minn.App. Dec.8, 1998). *Tousignant,* in turn, relied on *Terwilliger v. Hennepin County,* 561 N.W.2d 909 (Minn.1997). In *Terwilliger,* the supreme court held that official immunity did not protect employees of a county medical facility from liability for a decision not to hospitalize a mental-health patient who later committed suicide. *Id.* at 913–14. But we conclude that the reasoning of the supreme court in *Terwilliger.* is inapplicable here.

In determining whether official immunity applied in *Terwilliger,* the supreme court noted that the doctors and staff of the county medical facility were able to base their treatment decisions "not only on what they observed of [the patient], but also on the patient's medical history and on consultations with [the patient]." *Id.* at 913. The supreme court contrasted that situation to the "policeman's split-second decision whether to engage in a high-speed chase" that was presented in *Pletan. Id.*

In *Pletan,* the supreme court held that vicarious official immunity protected a city from liability for the death of a pedestrian

who was struck by a fleeing vehicle involved in a high-speed police chase. 494 N.W.2d at 41. The court reasoned that "[t]he decision to engage in a car chase and to continue the chase involves the weighing of many factors.... [T]hese questions must be resolved under emergency conditions with little time for reflection and often on the basis of incomplete and confusing information." *Id.*

■ We conclude that the acts of the ambulance crew that treated Virginia Bailey were more analogous to the acts of the police officer in *Pletan* than to the conduct of the doctors and staff in *Terwilliger,* who were able to take the time to gather the patient's medical information and reflect on appropriate treatment based on analysis of that information. Additionally, in *Terwilliger,* the patient's life was not obviously in danger. By contrast, the ambulance crew here did not have the luxury of time. The crew's treatment decisions had to be made immediately, based on scant information, with no time for reflection, and with the knowledge that Virginia Bailey's life was at stake. Because the doctors and staff in *Terwilliger* did not face the urgency that the ambulance crew faced, we find *Terwilliger* inapposite.

Respondent argues that applying official immunity to emergency medical care provided by government-employed ambulance crews would be an expansion of official immunity into the area of medical diagnosis and treatment, which the supreme court rejected in *Terwilliger.* But we do not read *Terwilliger* so broadly. Under Minnesota law, every county must maintain and operate a 911 emergency-response system and the system must provide emergency medical care and ambulance services. *See* Minn.Stat. §§ 403.01, subd. 1, 403.03 (2002).[1] Minnesota appellate courts have held that the official-immunity doctrine applies to government-employed ambulance drivers responding to emergency situations. *See Kari,* 582 N.W.2d at 924. It would be incongruous, we think, to find that official immunity protects a government-employed ambulance crew while providing statutorily mandated ambulance services in responding to an emergency but no longer applies when the crew arrives at the scene and begins providing statutorily mandated emergency medical care.

In *Kari,* the supreme court, applying the reasoning of *Pletan,* held that the conduct of government-employed ambulance drivers responding to an emergency is subject to official immunity because exposing them to civil liability would "tend to exchange prudent caution for timidity," thereby hindering the performance of an already difficult job. *Kari,* 582 N.W.2d at 924 (quoting *Pletan,* 494 N.W.2d at 41). The same reasoning applies to government-employed ambulance crews providing emergency medical care. Fear of potential civil liability arising from their actions in an emergency situation could cause crew members to hesitate in providing treatment, thereby increasing the risk to patients.

■ Finally, we note that the fact that a written protocol exists does not transform an otherwise discretionary act into a ministerial one. Field-level actions taken by public officials may be discretionary even when there are extensive regulations that dictate procedure. *See Kelly v. City of Minneapolis,* 598 N.W.2d 657, 665

---

1. 911 emergency-response services in the seven-county Twin Cities metropolitan area are coordinated by the Metropolitan 911 Board. *See* Minn.Stat. § 403.01, subd. 2 (2002) (providing that 911 systems may be multi-jurisdictional). The St. Paul Department of Fire and Safety Services provides ambulance services in association with the system developed by the Board.

(Minn.1999) (holding that, despite the fact that police conduct is governed by extensive regulations, statutes, and caselaw, officers responding to dispatch or making an arrest are engaging in discretionary conduct because they are required to make split-second decisions based on incomplete information). In treating the unconscious Virginia Bailey, the ambulance crew was not presented with "fixed and designated facts" giving rise to "absolute, certain and imperative" execution of a "specific duty." *See Rico,* 472 N.W.2d at 107. The ambulance crew's decisions regarding necessary medical care for Bailey had to be made "under emergency conditions with little time for reflection and ... on the basis of incomplete and confusing information." *See Pletan,* 494 N.W.2d at 41. The ambulance crew was required to exercise professional judgment based on constantly changing information. We conclude that the ambulance crew's conduct that is challenged here was discretionary for the purpose of applying official immunity.

Because the ambulance crew's conduct was discretionary, they are protected by official immunity unless they acted with malice. *See Kari,* 582 N.W.2d at 923. Respondent does not allege that the ambulance crew acted maliciously, and nothing in the record suggests that they did. Therefore, the ambulance crew's acts are subject to official immunity, and the city is protected by vicarious official immunity from liability in the death of Virginia Bailey.

## DECISION

Because the ambulance crew's acts are protected by official immunity, respondent's wrongful-death claim against the city is barred by the city's vicarious official immunity. The district court's order de-

nying the city's motion for summary judgment is reversed.

**Reversed.**