Lee RICHARDSON, as Wife of
Stanford Richardson, Sr.,
Deceased, Appellant,

v.

CITY OF ST. LOUIS and Bryan
Burrow, Respondents.

No. ED 91995.

Missouri Court of Appeals,
Eastern District,
Division One.

Sept. 22, 2009.

Mark T. McCloskey, Clayton, MO, for appellant.

Patricia A. Hageman, St. Louis, MO, for respondents.

PATRICIA L. COHEN, Judge.

### Introduction

Lee Richardson ("Plaintiff"), widow of the decedent, Stanford Richardson, Sr., appeals from the judgment entered by the Circuit Court of the City of St. Louis, dismissing her wrongful death and negligence claims against the City of St. Louis and City-employed emergency medical technician ("EMT"),[1] Bryan Burrow (collectively "Defendants"). Granting Defendants' motion to dismiss, the trial court concluded that the City and Mr. Burrow were entitled to sovereign immunity and official immunity, respectively. Plaintiff contends that the trial court erred because she alleged sufficient facts in her petition to establish that Defendants were not entitled to immunity. We affirm in part, reverse in part, and remand.

### Background

Plaintiff brought an action against Defendants following the sudden death of her husband, Stanford Richardson, Sr. In her petition, Plaintiff alleged that when her husband went into respiratory distress, Mr. Burrow, the responding "individual employed at The St. Louis Fire Department" who "provided emergency medical services to the consuming public", placed an endotracheal tube into her husband's esophagus instead of his trachea, causing him to suffer an "anoxic brain injury resulting in his death." She also alleged that Mr. Richardson came under the care of the Bureau of Emergency Medical Services, which is "a subdivision of The St. Louis Fire Department, operated by the

---

1. While Plaintiff did not use the exact term "emergency medical technician" in her petition, both parties use the term in their respective briefs to describe Mr. Burrow, and therefore we use the term in this opinion.

City of St. Louis and was engaged in the commercial enterprise of offering services to the general public for a fee[.]"

In Count I, Plaintiff sought damages against the City for negligently training and supervising its employees and for the negligent acts and omissions of its employees in treating her husband. In Count II, she sought damages against Mr. Burrow personally for his negligence in failing to exercise the degree of skill and learning ordinarily exercised by members of his profession when placing the endotracheal tube in her husband's esophagus and failing to subsequently recognize his error. Additionally, Plaintiff sought punitive damages against Mr. Burrow, alleging that his actions were made "willfully, wantonly or in conscious disregard" of her rights.

In response, Defendants jointly moved to dismiss on the grounds of sovereign immunity, official immunity, and the public duty doctrine. The trial court dismissed Plaintiff's petition with prejudice after concluding that the City was entitled to sovereign immunity and Mr. Burrow was protected by official immunity, but not the public duty doctrine. Plaintiff appeals.

### Standard of Review

We review a trial court's grant of a motion to dismiss *de novo*. *Crocker v. Crocker*, 261 S.W.3d 724, 726 (Mo.App. W.D.2008). "In reviewing the dismissal of a petition, the sole issue to be decided is whether, after allowing the pleading its broadest intendment, treating all facts al-

leged as true and construing all allegations favorably to the plaintiff, the plaintiff is entitled to relief." *Doss v. Doss*, 822 S.W.2d 427, 428 (Mo. banc 1992). "In making our determination, we may not assess the merits of the case or consider evidence outside the pleadings." *Thomas v. City of Kansas City*, 92 S.W.3d 92, 96 (Mo.App. W.D.2002) (quoting *Brennan By and Through Brennan v. Curators of the Univ. of Mo.*, 942 S.W.2d 432, 434 (Mo. App. W.D.1997)).

### Discussion

Plaintiff claims that neither sovereign immunity nor official immunity is a proper basis to grant Defendants' motion to dismiss. We address the applicability of these doctrines of immunity separately.[2]

### A. Sovereign Immunity— the City's Liability

Under Mo.Rev.Stat. § 537.600, public entities enjoy sovereign immunity as it existed at common law prior to September 12, 1977, unless immunity is waived, abrogated, or modified by statute. *Maune ex rel. Maune v. City of Rolla*, 203 S.W.3d 802, 804 (Mo.App. S.D.2006).[3] Municipal corporations, such as the City, are "public entities" entitled to sovereign immunity within the meaning of Section 537.600. *Gregg v. City of Kansas City*, 272 S.W.3d 353, 358 (Mo.App. W.D.2008). However, unlike state entities which receive full sovereign immunity, municipalities are entitled to sovereign immunity

---

**2.** While Plaintiff also argues against the application of the public duty doctrine, we do not reach that issue because the trial court rejected Defendants' claim of public duty immunity and Defendants do not advance that theory in this appeal.

**3.** Sovereign immunity is statutorily waived in tort actions arising from: (1) a public employee's negligent operation of a motor vehicle, or

(2) a dangerous condition on a public entity's property. Mo.Rev.Stat. § 537.600.1 (2000). Additionally, a public entity may waive immunity to the extent it has obtained tort liability insurance for the specific purposes covered. Mo.Rev.Stat. §§ 71.185 (municipalities), 537.610.1 (other public entities). Neither party contends that these statutory exceptions apply to the City in this case.

only when engaged in "governmental" functions, but not "proprietary" functions. *Southers v. City of Farmington,* 263 S.W.3d 603, 609 (Mo. banc 2008).

■ As an initial matter, Plaintiff contends that dismissal was inappropriate because sovereign immunity is an affirmative defense that must be pled and proved by Defendants. To the contrary, Missouri courts have routinely held that sovereign immunity is not an affirmative defense and that the plaintiff bears the burden of pleading with specificity facts giving rise to an exception to sovereign immunity when suing a public entity. *Burke v. City of St. Louis,* 349 S.W.2d 930, 933 (Mo. 1961); *Townsend v. E. Chem. Waste Sys.,* 234 S.W.3d 452, 470 (Mo.App. W.D.2007); *Manne,* 203 S.W.3d at 804.[4] "Accordingly, to state a cause of action sufficient to survive a motion to dismiss on the pleadings, the petition, when viewed in its most favorable light, must plead facts, which if taken as true, establish an exception to the rule of sovereign immunity." *Thomas,* 92 S.W.3d at 101.

■ Alternatively, Plaintiff claims that her petition established an exception to sovereign immunity because she pled sufficient facts demonstrating that the City's operation of its Bureau of Emergency Medical Services was a "proprietary" function. Proprietary functions are those "performed for the special benefit or profit of the municipality acting as a corporate entity" while governmental functions are those "performed for the common good of all". *Jungerman v. City of Raytown,* 925 S.W.2d 202, 204 (Mo. banc 1996), *abrogated on other grounds by Southers,* 263 S.W.3d 603. "In examining the question of whether an activity is governmental or proprietary," we look to the "generic nature of the activity" and "the motives of the legislature that conferred the power upon all municipalities." *State ex rel. Bd. of Tr's. of City of N. Kansas City Mem'l Hosp. v. Russell,* 843 S.W.2d 353, 359 (Mo. banc 1992).

■ Whether the operation of a city-owned emergency medical service is governmental or proprietary is a matter of first impression in Missouri.[5] Missouri courts, however, have long held that "preserving public health" is one of the "duties within the province of a municipality as a governmental agency and upon which the municipality acts without liability." *Parish v. Novus Equities Co.,* 231 S.W.3d 236, 242 (Mo.App. E.D.2007) (citing *Donahew v. City of Kansas City,* 136 Mo. 657, 38 S.W. 571, 572 (Mo.1897)). Thus, it is well-established that the operation of a city hospital is entitled to sovereign immunity as it is a governmental function that serves to safeguard and preserve public health. *Schroeder v. City of St. Louis,* 360 Mo. 293, 228 S.W.2d 677, 678–79 (1950); *see also Russell,* 843 S.W.2d at 359. Likewise, "[t]he creation of a municipal fire department is

---

4. We note that Plaintiff cites to *Greene County v. State,* where the court held that sovereign immunity is an affirmative defense which must be pled and proved by the defendant. 926 S.W.2d 701, 704 (Mo.App. W.D.1996). The court in *Greene County,* however, cited no authority in support of its holding, and its conclusion that sovereign immunity is an affirmative defense has not been followed by subsequent court decisions. *See State ex rel. Pub. Hous. Agency of City of Bethany v. Krohn,* 98 S.W.3d 911, 915 (Mo.App. W.D.2003) (declining to apply *Greene County* ); *Brennan By and Through Brennan,* 942 S.W.2d at 436 ("Sovereign immunity may be an affirmative defense, but, other than *Greene County,* there is little authority for that proposition.").

5. *But see Bailey v. City of St. Louis,* 578 S.W.2d 279, 280 (Mo.App. E.D.1979) (holding that summary judgment was proper because "no question of material fact existed concerning the ambulance service's status as a governmental function[ ].").

for the benefit of the general public, and therefore, any act or omission of the municipality associated with the performance of this service is a governmental function for which the municipality ordinarily may not be held liable." *Theodoro v. City of Herculaneum*, 879 S.W.2d 755, 761 (Mo. App. E.D.1994).

In her petition, Plaintiff alleges that the Bureau of Emergency Medical Services is a subdivision of the City's fire department and that it provides emergency medical services for the benefit of the "consuming public." There is no question that a city's operation of either a fire department or other entity providing medical services, namely hospitals, is a governmental function. Accordingly, whether considered a part of the services offered by the City's fire department or as a provider of medical services to the "consuming public", the City's operation of the Bureau of Emergency Medical Services is clearly a governmental function.[6]

Nevertheless, Plaintiff contends that because she alleged in her petition that the City offered emergency medical services "for a fee", she sufficiently pled facts establishing that the City was performing a proprietary function. In support, she relies on *Schulz v. City of Brentwood*, where the court reversed the dismissal of a plaintiff's action against a municipality because the petition alleged that the injury occurred while the plaintiff was attending a city-owned preschool and day-care center "for and in consideration of a fee paid." 725 S.W.2d 157, 160 (Mo.App. E.D.1987).

The fact that a municipality charges a fee for its services is not deter- minative of whether it is performing a proprietary or governmental function. *See Russell*, 843 S.W.2d at 359; *State ex rel. New Liberty Hosp. Dist. v. Pratt*, 687 S.W.2d 184, 186 (Mo. banc 1985). Even if a municipality charges a fee, the determinative issue is whether the activity is governmental or proprietary in nature. *Russell*, 843 S.W.2d at 359. As explained above, the City's Bureau of Emergency Medical Services provides both public healthcare services and emergency response services through the fire department. Where a city is acting within these well-established governmental functions, the governmental nature of the activity is not transformed merely because a city charges a fee. *See id.* (holding that, regarding a city hospital, "[e]ven if the sole motivation of the city government were profit, the hospital would still be governmental."). Additionally, we find persuasive the decisions from several other jurisdictions that have held that a city-owned ambulance service, providing a "general public benefit" and serving the "public health and welfare", is a governmental function, even if the city charges a fee. *See Smyser v. City of Peoria*, 215 Ariz. 428, 160 P.3d 1186, 1194 (2007) (see also cases cited in footnote 7).

Based on the foregoing, we find that the City's operation of the Bureau of Emergency Medical Services, as alleged in this case, was a governmental function. Accordingly, Plaintiff failed to plead facts establishing an exception to sovereign immunity and the trial court did not err in granting Defendants' motion to dismiss for the City.[7]

---

**6.** We further note that the authority to establish general ambulance services was expressly granted to cities by the legislature. Mo.Rev. Stat. § 67.300 (2000).

**7.** We note that in Plaintiff's reply brief, she relies on *Burns v. Elk River Ambulance, Inc.*,

55 S.W.3d 466 (Mo.App. S.D.2001), which involved a wrongful death claim against two paramedics employed by Joplin Emergency Medical Services. Plaintiff forthrightly recognizes that "issue of sovereign immunity regarding Joplin Emergency Medical Services

### B. Official Immunity—Mr. Burrow's Liability

 Plaintiff first asserts that the trial court erred in dismissing her petition against Mr. Burrow on the basis of official immunity because Defendants must plead official immunity as an affirmative defense. We agree with Plaintiff that official immunity is an affirmative defense.[8] *See Southers*, 263 S.W.3d at 611–12; *see also Davis v. Lambert–St. Louis Intern. Airport*, 193 S.W.3d 760, 766 n. 8 (Mo. banc 2006), *overruling Green v. Denison*, 738 S.W.2d 861, 865 (Mo. banc 1987). However, dismissal based on an affirmative defense may be appropriate if the petition clearly establishes "on its face and without exception" that the claim is barred. *Sheehan v. Sheehan*, 901 S.W.2d 57, 59 (Mo. banc 1995) (quoting *Int'l Plastics Dev., Inc. v. Monsanto Co.*, 433 S.W.2d 291, 294 (Mo. banc 1968)). Thus, Plaintiff is entitled to reversal only if Mr. Burrow's defense of official immunity is not clearly established by the petition.

 Arguing, in essence, that the petition does not clearly establish that official immunity bars the claim against Mr. Burrow, Plaintiff asserts that Mr. Burrow was not engaged in the type of conduct shielded by official immunity. Generally speaking, official immunity shields public officials for alleged acts of negligence committed during the course of their official duties when performing discretionary acts, but not when performing ministerial acts.

*Southers*, 263 S.W.3d at 610.[9] "A discretionary act requires the exercise of reason in the adaptation of means to an end and discretion in determining how or whether an act should be done or course pursued." *Id.* Conversely, a ministerial act is performed "in a prescribed manner, in obedience to the mandate of legal authority, without regard to [the public official's] own judgment or opinion concerning the propriety of the act to be performed." *Id.* (quoting *Kanagawa v. State*, 685 S.W.2d 831, 836 (Mo. banc 1985), *overruled on other grounds by Alexander v. State*, 756 S.W.2d 539 (Mo. banc 1988)). The final determination of whether an act is discretionary or ministerial is based on the specific facts of each case, judged by factors including the nature of the official's duties, the extent to which policymaking or professional expertise is involved, and the likely consequences of withholding immunity. *Jungerman*, 925 S.W.2d at 205.

Plaintiff claims that Missouri courts have consistently held that government-employed healthcare workers providing medical treatment to individual patients are not engaged in discretionary acts, thereby precluding application of official immunity to Mr. Burrow. In support of her position, Plaintiff relies on *State ex rel. Eli Lilly & Co. v. Gaertner*, where the court held that physicians at a state hospital sued for their negligent administration of medication to a patient were not entitled

ambulance and personnel was not an issue on appeal." Notwithstanding, Plaintiff asks us to draw certain inferences from the fact that neither the parties nor the court raised the issue of sovereign immunity. Because sovereign immunity was not an issue in *Burns*, it is of no assistance here. To reiterate words used by the court in *Burns:* "appellate review is limited to those issues presented in an appellant's points, . . . and our opinion on this point should be so viewed." *Id.* at 472 (internal citations omitted).

8. Defendants did plead the defense of official immunity in their answer. However, because the trial court entered its judgment on a motion to dismiss, it only considered the allegations in Plaintiff's petition.

9. The parties do not dispute that Mr. Burrow is a public official for official immunity purposes.

to official immunity. 619 S.W.2d 761 (Mo. App. E.D.1981). There, the court stated that discretionary decisions entitled to official immunity "are those which are a manifest exercise of the sovereign's power those decisions which 'go to the essence of governing.'" *Id.* at 765 (quoting *Jones v. State Highway Comm'n,* 557 S.W.2d 225 (Mo. banc 1977)). The court then concluded that:

> The defendant doctors are being sued as treating physicians, not as titular heads of any department nor are they being sued for allegedly negligent administrative policy decision, i.e., those "which go to the essence of governing." They are not being sued for an erroneous decision requiring the exercise of governmental judgment and discretion but for an allegedly erroneous medical decision for which they should answer without a shield of immunity.

*Id.* Subsequent to *Eli Lilly,* courts have generally adhered to the rule that government-employed physicians sued for their negligent treatment of individual patients are not entitled to official immunity. *See, e.g., Cooper v. Bowers,* 706 S.W.2d 542, 543 (Mo.App. W.D.1986); *see also Sherrill v. Wilson,* 653 S.W.2d 661, 667 (Mo. banc 1983) ("The major premise of [*Eli Lilly* ] was that treating physicians at state hospitals should be liable to their patients for malpractice, just as private physicians are.").

Plaintiff contends that like the physicians in *Eli Lilly,* Mr. Burrow is not entitled to official immunity because his decisions regarding the treatment of her husband were medical and therefore did not "go to the essence of governing." As an initial matter, to the extent Plaintiff argues that official immunity applies only to discretionary actions that are purely governmental in nature, this is not the law in Missouri. Missouri courts have routinely extended official immunity to discretionary acts even when the public official's actions were not governmental in nature. *See, e.g., State ex rel. St. Louis State Hosp. v. Dowd,* 908 S.W.2d 738, 741 (Mo.App. E.D.1995) (supervisor at public hospital's decision to turn on paper shredder was discretionary), *abrogated on other grounds by Cain v. Mo. Highways and Transp. Comm'n,* 239 S.W.3d 590 (Mo. banc 2007); *Warren v. State,* 939 S.W.2d 950, 954 (Mo.App. W.D.1997) (prison officials' decision regarding the absence of a safety guard on a table saw was discretionary). Recently, our Supreme Court thoroughly discussed the scope of official immunity and did not restrict immunity only to those actions which "go to the essence of governing." *See Southers,* 263 S.W.3d at 610–11. Moreover, in looking closely at the source of the "essence of governing" language quoted in *Eli Lilly,* we find that the phrase was originally used by the Supreme Court in its *Jones* decision when discussing the contours of sovereign immunity rather than official immunity and therefore is of limited utility as we consider the reach of official immunity under the circumstances presented here.[10]

---

10. In *Jones,* the Supreme Court prospectively abolished the doctrine of common law sovereign immunity, which the General Assembly soon thereafter restored with the enactment of Mo.Rev.Stat. §§ 537.600–650 (1978). In its holding, the *Jones* Court stated the following:

> We hold that the liability is for torts committed in the execution of activity decided upon, not for the decision itself in matters which *go to the essence of governing;* that our decision is not meant to impose liability upon the state or any of its agencies for acts or omissions constituting the exercise of a legislative, judicial, or executive function.

557 S.W.2d at 230 (emphasis added). In the *Jones* context, the Court used the phrase "essence of governing" to denote certain tradi-

Even accepting the vitality of *Eli Lilly* with respect to government-employed physicians, we are not convinced that the physicians in *Eli Lilly* are necessarily analogous to EMT's such as Mr. Burrow. While no Missouri court has addressed the applicability of official immunity to EMT's, we find instructive decisions from other jurisdictions that have extended official immunity to emergency medical personnel. *See Bailey v. City of St. Paul,* 678 N.W.2d 697 (Minn.Ct.App.2004); *Harry v. Glynn County,* 269 Ga. 503, 501 S.E.2d 196, 199 (1998); *Abraham v. Jackson,* 189 Mich. App. 367, 473 N.W.2d 699 (1991).

In particular, we find persuasive the Minnesota Court of Appeals' decision in *Bailey v. City of St. Paul,* where the court held that paramedics alleged to have negligently intubated a patient's esophagus were entitled to official immunity. 678 N.W.2d 697. There, the City of St. Paul appealed from the trial court's denial of its motion for summary judgment claiming that the acts of its ambulance crewmembers were entitled to official immunity and therefore the City was entitled to vicarious official immunity. *Id.* at 700. In response, the plaintiff argued, as Plaintiff does here, that because previous court decisions had determined that doctors at state institutions providing medical treatment to patients were not entitled to official immunity, the ambulance crew was likewise precluded from invoking the protection of official immunity. *Id.* at 701–02 (citing *Terwilliger v. Hennepin County,* 561 N.W.2d 909 (Minn.1997)). The *Bailey* court rejected the plaintiff's argument and in doing so distinguished between physicians in a state medical institution and emergency paramedics. Specifically, the court concluded that government-em-

ployed paramedics should be held to the same standard as police officers who are required to make split-second decisions in emergency situations, rather than physicians who have the luxury of time to gather the patient's information and reflect prior to pursuing a certain course of treatment. *Id.* The court added that the fear of potential civil liability arising from their actions in emergency situations could cause paramedics to hesitate, thereby increasing the risk to patients. *Id.* at 702.

◼ We find the analysis of the Minnesota court in *Bailey* consistent with the policies and considerations underlying Missouri's application of the doctrine of official immunity. Our Supreme Court has said that "[o]fficial immunity is intended to provide protection for individual government actors who, despite limited resources and imperfect information, must exercise judgment in the performance of their duties." *Southers,* 263 S.W.3d at 611. Additionally, the goal of official immunity is to "permit public employees to make judgments affecting public safety and welfare without concerns about possible personal liability." *Id.*

With these policies in mind, Missouri courts have routinely recognized that police officers responding to an emergency are required to exercise judgment and discretion and are therefore entitled to official immunity. *Davis,* 193 S.W.3d at 763. Courts have further noted that imposing liability on police officers in these situations may delay responses to emergency calls, thereby adversely affecting those in need of emergency assistance. *Id.* (citing *Bachmann v. Welby,* 860 S.W.2d 31, 34 (Mo.App. E.D.1993)).

tional government functions to which sovereign immunity continued to be applicable, rather than to limit the scope of discretionary

acts entitled to official immunity, as in *Eli Lilly.*

Like the court in *Bailey,* we agree that the judgment EMT's use when treating and transporting persons with emergency medical conditions is more comparable to the judgment police officers use when responding to an emergency than that of physicians treating individual patients in a medical institution. Moreover, an emergency medical responder's use of professional judgment and discretion in rapidly-evolving emergency situations with limited information is the type of circumstance in which official immunity is intended to provide protection. Given these considerations, we find that EMT's in emergency situations, even if providing medical treatment, are distinguishable from physicians in medical institutions, and therefore we decline to extend the rationale of *Eli Lilly* to EMT's like Mr. Burrow. In short, we conclude that on a case-by-case basis, application of official immunity to the conduct of an EMT may be appropriate.

█ Finally, Plaintiff contends that even if official immunity is available to EMT's, dismissal was improper given the existence of unresolved factual issues regarding the nature of Mr. Burrow's conduct. We agree for the purpose of dismissal on the grounds of official immunity based solely on the petition, that the facts alleged by Plaintiff do not adequately reveal the circumstances surrounding Mr. Burrow's alleged failure to properly intubate Mr. Richardson. In particular, the petition does not describe the scope of Mr. Burrow's duties as an EMT for the City or the extent to which Mr. Burrow was required to exercise professional expertise or judgment. As mentioned above, the final determination of whether an act is discretionary or ministerial is based on the specific facts of the case after weighing several factors. *Jungerman,* 925 S.W.2d at 205. Here, the limited facts provided in Plaintiff's petition are insufficient to determine whether Mr. Burrow's treatment of Mr. Richardson was a discretionary act within his official duties. *Compare Bailey,* 678 N.W.2d at 703 (determining that ambulance crew was engaged in discretionary acts entitled to official immunity on motion for summary judgment). Because the facts of the petition alone are not adequate to clearly establish the defense of official immunity, the trial court erred in granting Defendants' motion to dismiss Mr. Burrow.[11]

### Conclusion

The portion of the trial court's judgment dismissing Plaintiff's action against the City on the grounds of sovereign immunity is affirmed. The portion of the judgment dismissing Plaintiff's action against Mr. Burrow on the basis of official immunity is reversed and the case is remanded to the trial court for proceedings consistent with this opinion.

KURT S. ODENWALD, P.J., and GLENN A. NORTON, J., Concur.

---

11. We note that Plaintiff also contends that dismissal of Mr. Burrow was in error because acts performed in bad faith or with malice are not entitled to official immunity. Plaintiff did not raise this argument before the trial court, and therefore we decline to reach this issue.