Deborah THOMAS and Philip Thomas, Appellants,

v.

Michael BRANDT, James Loehrer, Respondents,

and

Community Fire Protection District, Defendant.

No. ED 94414.

Missouri Court of Appeals, Eastern District, Division One.

Sept. 21, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 2, 2010.

Application for Transfer Denied Dec. 21, 2010.

Doreen Ann Graham–Powell, Steven Dennis Rineberg, Stephen Frank Meyerkord, St. Louis, MO, for appellant Deborah Thomas.

Ryan Christopher Mielcarek, Clayton, MO, for appellant Philip Thomas.

Philip Louis Willman, Angela Elaine Pozzo, Robyn Greifzu Fox, St. Louis, MO, for respondents Michael Brandt/James Loehrer and defendant Community Fire Protection District.

KENNETH M. ROMINES, J.

### Introduction

Deborah and Philip Thomas ("Appellants"), survivors of decedent Anthony Thomas, appeal the judgment of the Circuit Court of St. Louis County, the Honorable John A. Ross, presiding, granting summary judgment in favor of publicly-employed emergency medical personnel Michael Brandt and James Loehrer ("Respondents"). In granting summary judgment, the trial court concluded that Brandt and Loehrer were entitled to official immunity. On appeal, Appellants argue that Respondents' actions were not shielded by official immunity because they exercised discretion in a non-emergency situation. Because we find that the trial court improperly granted summary judgment, we reverse and remand.

### Background and Procedural History

On the evening of 10 July 2008, Anthony Thomas ("decedent") called 9–1–1 complaining of chest pains and difficulty breathing. Three minutes after the call, an ambulance unit was dispatched from the Community Fire Protection District to decedent's home. The unit was manned by Michael Brandt, a licensed emergency medical technician, and James Loehrer, a licensed paramedic.[1] Both were employed by Community Fire Protection, a public-entity.

The unit arrived at decedent's home and Respondents performed a primary survey of the decedent ten minutes after the initial call was placed. Respondents followed up on their primary survey with a secondary survey a minute later. They then obtained a set of vital signs. Based on their examination, Respondents diagnosed decedent with acid reflux and recom-

---

1. Without addressing whether there are any substantive differences between the two job titles, for purposes of this opinion we will refer to both as emergency responders.

mended a treatment of over-the-counter Maalox/Gaviscon. Believing decedent was in no immediate medical danger, Respondents left the home fifteen minutes after arriving.

The next morning at approximately 10:30 a.m. decedent again called 9–1–1, still complaining of difficulty breathing and chest pains. An ambulance unit from Community Fire Protection District was again dispatched to decedent's home arriving five minutes later. This unit was manned by a different two-person team than had responded the night before. After finding the decedent was experiencing pain across the chest and into the back, shortness of breath, diaphoresis and nausea, the team began administering emergency treatment with oxygen, aspirin and EKG. At 10:55 a.m. the team initiated emergency transport of decedent to De-Paul Health Center where he was admitted ten minutes later. At the Health Center decedent was diagnosed with cardiac arrest and pulmonary embolism and began receiving treatment. The treatment was unsuccessful and decedent died at 4:00 p.m. on 11 July 2008.

After his death, Deborah Thomas, surviving spouse of decedent, and Philip Thomas, surviving son of decedent, filed a wrongful death suit against Respondents and their employer. Count I alleged that Respondents were negligent in the care they provided when responding to decedent's first 9–1–1 call on 10 July 2008.[2] Defendants Michael Brandt, James Loehrer and Community Fire Protection filed a Motion for Summary Judgment. The Honorable John A. Ross granted summary judgment in favor of all three defendants. The trial court found that Community Fire Protection District was immune to Appel-

lant's suit based on sovereign immunity pursuant to Mo.Rev.Stat. § 537.600.1 (2009). The trial court found that Respondents were immune to Appellant's suit based on official immunity pursuant to the principles established in *Richardson v. City of St. Louis,* 293 S.W.3d 133 (Mo.App. E.D.2009). Appellants filed a notice of appeal on 10 February 2010 as to the ruling in favor of Respondents.

### *Standard of Review*

We review a trial court's grant of summary judgment *de novo. Southers v. City of Farmington,* 263 S.W.3d 603, 608 (Mo. banc 2008). Summary judgment is appropriate when the moving party demonstrates there is no genuine issue of material fact and they are entitled to judgment as a matter of law. *Id.* The movant bears the burden of establishing this right and we review the record in the light most favorable to the non-moving party. *Id.*

### *Discussion*

■ The sole issue for consideration by this Court is whether the acts of Respondents in the circumstances of this case were shielded by official immunity. Official immunity is a judicially-created doctrine designed to protect public employees from liability for allegedly negligent acts committed during their performance of official duties. *Id.* at 610 Generally, whether public employees are protected turns on the type of act involved; the court must determine whether the challenged act was discretionary or ministerial. *Davis v. Lambert–St. Louis Intern. Airport,* 193 S.W.3d 760, 763 (Mo. banc 2006). Acts which are discretionary are protected, while acts which are ministerial are not. *Id.* A discretionary act is one that requires

---

2. Count II, alleging vicarious liability of the employer, and Count III, challenging the constitutionality of Missouri's tort reform provi-

sions, were not appealed and thus are not addressed in this opinion.

"'the exercise of reason in the adaptation of means to an end and discretion in determining how or whether an act should be done or course pursued.'" *Id.* (quoting *Kanagawa v. State*, 685 S.W.2d 831, 836 (Mo. banc 1985)). A ministerial act is a clerical duty performed pursuant to a mandate with no exercise of judgment involved. *State ex rel. Eli Lilly & Co. v. Gaertner*, 619 S.W.2d 761, 765 (Mo.App. E.D.1981). The doctrine is intended to encourage a "vigorous and effective government" where public officials can make decisions free of fear of personal liability. *Southers*, 263 S.W.3d at 611; *Eli Lilly*, 619 S.W.2d at 763.

When the issue of official immunity involves a publicly-employed medical professional, there is a second step to the analysis. Two different approaches have been used as to the second step. In *Eli Lilly*, this Court held that whether a state-employed doctor's actions are discretionary or ministerial turns on whether those actions "go to the essence of governing." *Eli Lilly*, 619 S.W.2d at 765. The Court found that when doctors were treating patients they were not acting as the "titular head[s] of any department" or making administrative policy decisions such that their acts did not go the essence of governing. *Id.* Therefore, doctors were not protected by official immunity when treating patients. *Id.*

In *Richardson*, this Court held that whether the actions of emergency medical responders are protected turns on the circumstances of the situation. *Richardson*, 293 S.W.3d at 142. When emergency responders are acting in a rapidly-evolving emergency situation with limited information, they are protected by official immunity. *Id.* This Court in *Richardson* reasoned that in emergency situations, emergency responders' actions are more like those of a police officer responding to an emergency, whose actions are protected, than like a doctor treating patients in a hospital setting, whose actions are not. *Id.*

The *Richardson* court also questioned the vitality of *Eli Lilly*'s "essence of governing" approach after our Supreme Court's opinion in *Southers*. The *Southers* opinion included a clarification of the doctrine of official immunity. *Southers*, 263 S.W.3d at 610–11. As that discussion did not include any reference to the "essence of governing" approach, the *Richardson* court concluded that *Southers* rejected that approach. *Richardson*, 293 S.W.3d at 140.

■ Without commenting on the vitality of *Eli Lilly*, we reaffirm the approach advanced in *Richardson*. When publicly-employed emergency medical personnel are treating patients, their negligent acts are protected by official immunity only if they are acting in a true emergency situation. This true emergency situation is a strict requirement. A true emergency is one involving rapidly-evolving circumstances where the medical personnel have limited information. The court should determine whether the situation involved a true emergency on a case-by-case basis by evaluating the totality of the circumstances.

The facts in this case show that Respondents were not acting in a true emergency situation. Unlike the decedent in *Richardson* who was in respiratory distress and had to be immediately intubated, the decedent in this case was stable when the Respondents arrived. Decedent was able to effectively communicate with the Respondents about his symptoms. Respondents had time to perform a primary and secondary survey and obtain vital signs. Decedent survived for almost 20 hours after Respondents' apparent misdiagnosis. The time and information available to Respondents was more like that of a doctor

treating a patient in a hospital than that of an emergency responder arriving to find a patient in critical and devolving condition. Given that Respondents were not acting in a rapidly-evolving emergency situation, the defense of official immunity in not available to them.

Respondents argue that failing to provide blanket official immunity to publicly-employed emergency responders in all situations will cause hesitancy by those responders resulting in an increase risk to patients. We believe that the strict emergency requirement adequately addresses this concern. Responders acting in a true emergency situation will be protected by official immunity, allowing them to act without fear of civil liability. Responders acting in non-emergency situations will be held to the same standard of care as their privately-employed counterparts. Quite the opposite of causing hesitancy in their treatment, this approach encourages responders to spend more time with patients and be more thoughtful in their diagnosis—to not act rashly when time is not of the essence.

### Conclusion

Respondents are not immune from Appellant's wrongful death action based on official immunity. Official immunity is available to publicly-employed emergency responders only if they are acting in a true emergency situation. In this case, Respondents were not acting in a true emergency situation. Summary judgment in favor of Respondents is reversed and the case is remanded to trial court for proceedings consistent with this opinion.

ROY L. RICHTER, C.J., and MICHAEL BULLERDIECK, Sp., J., concur.