Lee RICHARDSON, as Wife of
Stanford Richardson, Sr.,
Deceased, Appellant,

v.

Bryan BURROW, Respondent.

No. ED 97002.

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 21, 2012.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 24, 2012.

Mark T. McCloskey, Patricia N. McCloskey, Saint Louis, MO, For Appellant.

Patricia A. Hageman, Thomas R. McDonnell, Saint Louis, MO, For Respondent.

## OPINION

GLENN A. NORTON, J.

Lee Richardson, as wife of Stanford Richardson, Sr., deceased ("Plaintiff") appeals the grant of summary judgment in favor of Bryan Burrow on her wrongful death action. We reverse and remand.

## I. BACKGROUND

Plaintiff brought a wrongful death action against Burrow [1] following the death of her husband, Stanford Richardson, Sr. ("Decedent"). Plaintiff's petition alleged that Burrow, a paramedic employed by the City of St. Louis, placed an endotracheal tube in Decedent's esophagus, rather than his trachea, causing Decedent to suffer an anoxic brain injury resulting in his death. Following the filing of Plaintiff's petition, Burrow filed a motion to dismiss asserting official immunity. The trial court granted Burrow's motion to dismiss, and Plaintiff appealed claiming official immunity did not protect Burrow. This Court, in *Richardson v. City of St. Louis,* found that official immunity could be applied to emergency medical responders on a case-by-case basis. 293 S.W.3d 133, 142 (Mo.App. E.D. 2009) ("*Richardson I*"). However, we reversed and remanded, holding that the facts alleged in the petition were insufficient to determine whether Burrow was entitled to official immunity. *Id.*

On remand, and after discovery, the following uncontroverted facts were presented. In June 2007, Decedent went into respiratory distress. Burrow, a paramedic employed by the City of St. Louis, responded to a 911 call and found Decedent unconscious and unresponsive. Burrow immediately took Decedent's vital signs and placed him on supplemental oxygen. Despite being placed on supplemental oxygen, Decedent's respiration rate was eight breaths per minute with an oxygen saturation level of 62%. The City of St. Louis has criteria for paramedics which mandate intubation when a patient's respiration rate is eight or less with an oxygen saturation level below 80%. Due to Decedent's

---

1. Her petition also named the City of St. Louis as a defendant. However, the City of St. Louis was previously dismissed from the suit and is not a party to this appeal.

low respiration rate and oxygen saturation level, Burrow intubated Decedent. The purpose of intubation is to provide oxygen to the patient's lungs, which can only be accomplished by placing the endotracheal tube into the patient's trachea. Upon Decedent's arrival at the hospital, it was discovered that the endotracheal tube was in his esophagus.

Subsequent to Decedent's death, Plaintiff filed a petition alleging that Burrow's placement of the endotracheal tube caused Decedent to suffer an anoxic brain injury, resulting in his death. The trial court granted Burrow summary judgment on the grounds that his alleged negligent actions are protected by official immunity. Plaintiff appeals.

## II. DISCUSSION

### A. Standard of Review

The propriety of a grant of summary judgment is purely an issue of law that we review de novo. *Hill v. Ford Motor Co.*, 277 S.W.3d 659, 664 (Mo. banc 2009). We review the record in the light most favorable to the party against whom judgment was entered. *Id.* Additionally, we take as true any facts set forth in favor of the motion for summary judgment unless they are contradicted by the non-movant. *Herndon v. City of Manchester*, 284 S.W.3d 682, 686 (Mo.App. E.D.2009). "Summary judgment is appropriate when the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law." *Hill*, 277 S.W.3d at 664.

### B. Official Immunity

In Plaintiff's second point on appeal,[2] she argues that the trial court erred

in granting Burrow summary judgment because Burrow did not engage in any discretionary conduct entitling him to official immunity. Plaintiff argues that Burrow's conduct was mandated by City of St. Louis criteria which require paramedics to intubate a patient under the circumstances presented to Burrow.

Pursuant to the doctrine of official immunity, public employees are protected from liability for acts of negligence committed in their performance of discretionary acts in the course of their official duties. *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. banc 2008). The doctrine is "intended to provide protection for individual government actors who, despite limited resources and imperfect information, must exercise judgment in the performance of their duties." *Id.* at 611. In determining whether the acts of a public employee are protected, courts must determine whether the challenged act was discretionary or ministerial. *Thomas v. Brandt*, 325 S.W.3d 481, 483 (Mo.App. E.D.2010). Discretionary acts, those that require the exercise of judgment and discretion in determining how or whether an act should be done, are protected. *Id.* at 483–84. Ministerial acts, which amount to a "clerical duty performed pursuant to a mandate with no exercise of judgment involved," are not protected. *Id.* Our Court looks at the degree of reason and judgment required to perform the act when determining whether an act is discretionary or ministerial. *Division Cavalry Brigade v. St. Louis County*, 269 S.W.3d 512, 518 (Mo.App. E.D.2008).

This Court was first presented the issue of whether emergency medical respond-

---

**2.** Because Plaintiff's second point is dispositive of this appeal, it is unnecessary to address Plaintiff's first point on appeal.

ers[3] could be protected by official immunity in *Richardson I*. In that appeal, Plaintiff argued that emergency medical responders should be treated like publicly employed physicians who are not entitled to official immunity. *Richardson I*, 293 S.W.3d at 140. Relying on *Bailey v. City of St. Paul*, 678 N.W.2d 697 (Minn.Ct.App. 2004), our Court found that "the judgment [emergency medical responders] use when treating and transporting persons with emergency medical conditions is more comparable to the judgment police officers use when responding to an emergency than that of physicians treating individual patients in a medical institution." *Richardson I*, 293 S.W.3d at 142. Recognizing that police officers responding to emergencies are routinely protected with official immunity, we concluded that application of official immunity to emergency medical responders may be appropriate on a case-by-case basis. *Id.* However, our Court reversed and remanded the dismissal of Burrow because the facts from the petition were "insufficient to determine whether Mr. Burrow's treatment of [Decedent] was a discretionary act within his official duties." *Id.*[4]

On remand, Burrow made the following admissions in his reply to Plaintiff's additional statement of uncontroverted facts:

> Prior to intubation, the Decedent's respiration rate was 8 per minute and his

oxygen saturation was 62% despite being on supplemental oxygen.

> As a paramedic, if a patient's respiration rate is 8 and his oxygen saturation rates are below 80%, you intubate the patient. The City of St. Louis had a criteria for its paramedic *which mandated intubation* when a patient's respiration rate is 8 or less, and his oxygenation level is below 80.

(emphasis added). In light of these admissions, we cannot find that Burrow's treatment of Decedent was a discretionary act.

In granting Burrow summary judgment on the grounds that his alleged negligent actions are protected by official immunity, the trial court relied on the Minnesota Court of Appeals decision in *Bailey*. In *Bailey*, the Minnesota Court of Appeals was presented with the issue of whether to extend official immunity to an ambulance crew who intubated a patient in the esophagus rather than the trachea. 678 N.W.2d at 699. The plaintiffs argued that the conduct was ministerial because there was written protocol describing when and how to intubate a patient. *Id.* at 700. The Court stated, "the fact that a written protocol exists does not transform an otherwise discretionary act into a ministerial one. Field-level actions taken by public officials may be discretionary even when there are extensive regulations that dictate procedure." *Id.* at 702. However, the

---

**3.** Although the Court in *Richardson I* used the term "emergency medical technician," that term carries no significant legal relevance. *See Richardson I*, 293 S.W.3d at 135 n. 1 (explaining that the term was used to reflect the language in the parties' briefs). We use the term "emergency medical responders" to make it clear that the holding in *Richardson I* applies not only to emergency medical technicians, but also to other medical responders such as paramedics. *See Thomas*, 325 S.W.3d at 482 n. 1 (applying the reasoning of *Richardson I* to both emergency medical technicians and paramedics).

**4.** We note that in *Thomas*, our Court reaffirmed the *Richardson I*'s holding that emergency medical responders could be entitled to official immunity on a case-by-case basis. 325 S.W.3d at 484. In *Thomas*, we held that the emergency medical responders were not entitled to official immunity because they were not acting in a true emergency situation. *Id.* at 485. Here, it is undisputed that Burrow was responding to a true emergency situation. At issue is whether Burrow's treatment of Decedent was a discretionary act.

Minnesota Court noted that the ambulance crew "was not presented with 'fixed and designated facts' giving rise to 'absolute, certain and imperative' execution of a 'specific duty.'" *Id.* at 703 (internal quotation omitted). Instead, the ambulance crew had to make the decision regarding the necessary medical care "on the basis of incomplete and confusing information." *Id.* (internal quotation omitted).

In contrast to the ambulance crew in *Bailey,* Burrow was presented with fixed and designated facts giving rise to a duty to intubate the Decedent. Burrow was presented with facts indicating the Decedent had an oxygen rate of eight and an oxygen saturation level of 62%. By Burrow's own admission, criteria issued by the City of St. Louis mandates intubation of a patient under these circumstances. Therefore, under the circumstances of this case, Burrow's intubation of Decedent was a ministerial act "performed pursuant to a mandate with no exercise of judgment involved." *See Thomas,* 325 S.W.3d at 484; *see also Rush v. Senior Citizens Nursing Home Dist. of Ray County,* 212 S.W.3d 155, 160–61 (Mo.App. W.D.2006) (finding official immunity did not extend to nurses' ministerial duty of following a set policy from a doctor). Accordingly, Burrow's actions are not protected by official immunity, and the trial court erred in granting Burrow summary judgment. Point two is granted.

### III. CONCLUSION

We reverse the trial court's grant of summary judgment in favor of Burrow and the cause is remanded for further proceedings in accordance with this opinion.

PATRICIA L. COHEN, P.J. and ROBERT M. CLAYTON III, J., concur.