**M.C.-B., a minor, by and through her Mother and next friend, T.B. and T.B., Individually and as legal guardian and Mother of M.C.-B., Appellants,**

v.

**HAZELWOOD SCHOOL DISTRICT, Kate Sievers, Stacy Hargrove and Scott Penning, Respondents.**

**No. ED 99601.**

Missouri Court of Appeals, Eastern District, Division Two.

Nov. 12, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 13, 2014.

---

James D. O'Leary St. Louis, MO, for Appellants.

Darold E. Crotzer, Jr., Cindy R. Ormsby, Clayton, MO, for Respondents.

ROBERT G. DOWD, JR., Judge.

M.C.-B. and T.B.[1] ("Plaintiff"), appeal from the trial court's grant of summary judgment in favor of Hazelwood School District ("Hazelwood"), Kate Sievers ("Sievers"), Stacy Hargrove ("Hargrove"), Chris Williams ("Williams"), and Scott Penning ("Penning"). Plaintiff contends the trial court erred in granting summary judgment in favor of Sievers, Hargrove, and Penning (collectively "Defendants"). We reverse and remand.

■ Plaintiff was a seventh grade student at Hazelwood West Middle School. On May 2, 2011, Plaintiff was returning to class after an appointment with Sievers when she was abducted and sexually assaulted by four male seventh grade students in the school restroom. The four male seventh grade students had been released from physical education class to return backpacks to their lockers.

After the incident, Plaintiff reported it to Sievers. Sievers then interviewed some of the alleged assailants. Sievers subsequently called the police regarding the incident.

Plaintiff filed this action against Hazelwood, Sievers, Hargrove, Williams, and Penning. Hazelwood was the school district that included Hazelwood West Middle School, where the incident took place. Sievers was serving as the principal of sixth and seventh grades at the school. Hargrove, Williams, and Penning were serving as the physical education teachers at the school.

Plaintiff's petition alleged: Count I for negligence against Hazelwood; Count II for negligence against Hargrove, Williams, and Penning; Count III for negligent supervision against Hargrove, Williams, Pen-

1. M.C.-B. is a minor and resident of Missouri. T.B. is the mother and legal guardian of M.C.-

B. T.B. is serving as Next Friend for M.C.-B. to allow her to bring this action.

ning, and Sievers; and Count IV for negligence against Sievers.[2]

Hargrove, Williams, Penning, and Sievers filed an answer denying liability. Hargrove, Williams, Penning, and Sievers also asserted as affirmative defenses that they were protected from tort liability under the doctrine of official immunity and by the Paul D. Coverdell Teacher Protection Act of 2001, 20 U.S.C. Sections 6731–6738.

Hargrove, Williams, Penning, and Sievers then filed a motion for summary judgment with respect to Count II against Hargrove, Williams, and Penning; Count III against Hargrove, Williams, Penning, and Sievers, and Count IV against Sievers.[3] Plaintiff filed a response.

The trial court eventually granted summary judgment in favor of Defendants on Counts II, III, and IV, finding there were no genuine issues of material fact and Defendants were entitled to judgment as a matter of law. The trial court noted as to each of the Counts that Defendants were protected by the doctrine of official immunity and the Coverdell Act. This appeal follows.

The propriety of summary judgment is purely an issue of law. *Meramec Valley R–III School Dist. v. City of Eureka*, 281 S.W.3d 827, 835 (Mo.App. E.D.2009). Accordingly, the standard of review on appeal regarding summary judgment is no different from that which should be employed by the trial court to determine the propriety of sustaining the motion initially. *Id.* Summary judgment is designed to permit the trial court to enter judgment, without delay, where the moving party has demonstrated its right to judgment as a matter of law. *Id.* However, we note in negligence cases, summary judgment is not as feasible as in other kinds of cases.

*Bruner v. City of St. Louis*, 857 S.W.2d 329, 332 (Mo.App. E.D.1993).

Our review of the grant of summary judgment is *de novo*. *Id.* Summary judgment is upheld on appeal if the movant is entitled to judgment as a matter of law and no genuine issues of material fact exist. *Id.* The record is reviewed in the light most favorable to the party against whom judgment was entered, according that party all reasonable inferences that may be drawn from the record. *Meramec Valley R–III School Dist.*, 281 S.W.3d at 835. Facts contained in affidavits or otherwise in support of a party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion. *Id.* A defending party may establish a right to judgment as a matter of law by showing any one of the following: (1) facts that negate any one of the elements of the claimant's cause of action; (2) the non-movant, after an adequate period of discovery, has not and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements; or (3) there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense. *Id.* Once the movant has established a right to judgment as a matter of law, the non-movant must demonstrate that one or more of the material facts asserted by the movant as not in dispute is, in fact, genuinely disputed. *Id.* The non-moving party may not rely on mere allegations and denials of the pleadings, but must use affidavits, depositions, answers to interrogatories, or admissions on file to demonstrate the existence of a genuine issue for trial. *Id.* "Genuine" implies that the issue, or dispute, must be

---

2. Hazelwood was dismissed from the suit without prejudice.

3. Williams was subsequently dismissed from the suit without prejudice.

a real and substantial one-one consisting not merely of conjecture, theory and possibilities. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.* 854 S.W.2d 371, 378 (Mo. banc 1993). A "genuine issue" is a dispute that is real, not merely argumentative, imaginary or frivolous. *Id.* at 382. Where the "genuine issues" raised by the non-movant are merely argumentative, imaginary or frivolous, summary judgment is proper. *Id.*

Plaintiff's first two points deal with the same issue so we will address them together. In her first and second point, Plaintiff argues the trial court erred in granting summary judgment in favor of Defendants on Counts II, III, IV because Defendants failed to meet their burden to prove the absence of genuine issues of material fact regarding the applicability of their affirmative defenses of official immunity and the Coverdell Act. We agree.

In her first and second points, Plaintiff alleges there were, respectively, eleven and twenty statements of allegedly uncontroverted material facts that were actually disputed.[4] We will examine these allegedly disputed facts to determine whether they are in fact disputed, and we will determine whether these facts are necessary to support the arguments of Defendants that they are immune under the doctrine of official immunity and under the Coverdell Act. We will begin by examining the facts relevant to the defense of official immunity.

Where a grant of summary judgment is based on the affirmative defense of official immunity, we must consider whether there is a genuine dispute as to the existence of facts necessary to support this properly pleaded affirmative defense. *Conway v.*

*St. Louis County,* 254 S.W.3d 159, 164 (Mo.App. E.D.2008).

The doctrine of official immunity shields a public official from liability for negligence in the performance of his or her discretionary decisions, as opposed to ministerial duties. *Geiger v. Bowersox,* 974 S.W.2d 513, 517 (Mo.App. E.D.1998). The decision as to whether a public official's acts are discretionary or ministerial must be determined by the facts of each particular case after weighing such factors as the nature of the official's duties, the extent to which the acts involve policy making or the exercise of professional expertise and judgment, and the likely consequences of withholding immunity. *Id.* Discretionary acts, those that require the exercise of judgment and discretion in determining how or whether an act should be done, are protected. *Richardson v. Burrow,* 366 S.W.3d 552, 554 (Mo.App. E.D.2012). Ministerial acts, which amount to a clerical duty performed pursuant to a mandate with no exercise of judgment involved, are not protected. *Id.* We look at the degree of reason and judgment required to perform the act when determining whether an act is discretionary or ministerial. *Id.*

Plaintiff alleges there are numerous genuine issues of material fact. The first category of alleged disputed facts concerns the discretion of teachers and administrators in certain matters. Plaintiff relies on the deposition testimony of Sievers' supervisor, Dr. Allison Klouse, to deny the Defendants' statement that school administrators have discretion when investigating allegations of student misconduct. In her denial, Plaintiff contends Dr. Klouse stated all teachers and principals are to follow

---

4. The first eleven facts were asserted by Defendants and denied by Plaintiff. The other twenty facts were asserted by Plaintiff and denied by Defendants. Defendants maintain these alleged disputed facts were not material and did not preclude their entitlement to summary judgment.

Missouri statutes and regulations, which do not allow for discretion. Plaintiff also notes Defendants also deny Plaintiff's assertion that teachers have no discretion and are required to follow the rules and procedures in the substitute handbook. Defendants rely on the exhibit containing the board of education's staff conduct policy to support this conclusion. In addition, Plaintiff points out Defendants deny Plaintiff's assertion that there is a policy that applies to all teachers providing that they do not have discretion in following up when a student is overdue in returning to the classroom. Defendant supports this denial by referring to the exhibit containing the board of education's staff conduct policy. These disputed statements demonstrate there are genuine issues of material fact regarding whether the teachers and principals were performing discretionary acts, in which case they could be entitled to official immunity, or ministerial acts, in which case they would not be entitled to official immunity.

In addition to the above, there are numerous disputed facts that bear on the question, albeit less directly, of whether Defendants were performing ministerial rather than discretionary acts.

First, Plaintiff notes Defendants deny that the substitute handbook, which contains rules about allowing students to leave class, applies to full-time teachers, arguing instead that it is for substitute teachers only. Defendant supports this denial by referring to the exhibit containing the board of education's staff conduct policy, arguing this is the policy that applies to full-time teachers, not the substitute handbook. Plaintiff asserts Defendants also deny that Penning and Hargrove violated the school's policies by leaving the alleged assailants unattended and not following up when they were overdue in returning. Defendants support this denial by referring to the depositions of Hargrove and Sievers, who stated they did not violate the policies.

However, Plaintiff continues to contend Defendants did violate school policies. Plaintiff denies Hargrove either notified the seventh grade office by walkie-talkie or issued a hall pass to the students to return their backpacks to their lockers. Plaintiffs support this denial with Hargrove's deposition testimony wherein he stated he did not recall issuing hall passes. On the other hand, Plaintiff notes Defendants deny Plaintiff's statement that sending a child away from gym class required a hall pass and was a policy teachers had no discretion in following. Defendants rely on the deposition testimony of Hargrove for this denial. Hargrove stated in her deposition that there was no policy on hall passes, but rather teachers had discretion. Relying on Hargrove's deposition testimony, Defendants state it was customary to have a hall pass, but it was not required and often teachers would radio the principal's office when students left class. Thus, Defendants contend teachers have discretion whether to issue a pass or to radio the office. Moreover, Plaintiff notes Defendants deny her allegation that the alleged assailants did not have hall passes, relying on the deposition testimony of Hargrove and Sievers.

In addition, with regard to the allegations of negligence of Hargrove and Penning, Defendants note Penning and Hargrove were both supervising the four assailants. Plaintiff maintains Defendants deny, relying on Penning's deposition testimony, that Penning did not know the four boys were sent away by Hargrove to return their backpacks to their lockers. Defendants assert Penning merely said he did not recall, not that he did not know.

Plaintiff notes Defendants also deny that Penning and Hargrove took no steps to find out where the students were after they were sent away to return their backpacks. Defendants assert, relying on their deposition testimony, that Penning and Hargrove were not asked if they took steps to find out where the students were, and they did not recall what they did that day. Further, Plaintiff points out Defendants deny that it takes no more than two minutes to walk from the gym to the seventh grade lockers and back and that students should be back in gym class within two to four minutes after being sent to the seventh grade lockers and would be overdue if not back in that time period. Defendants reference the deposition testimony of Dr. Klouse and argue she merely gave her opinion on how long it would take and did not account for any number of factors that might delay someone. Plaintiff also notes Defendants deny that Hargrove did not recall seeing the four boys or checking on their status after she sent them away from gym class to return their backpacks. Defendants rely on Hargrove's deposition testimony to assert Hargrove actually stated she did not recall what she did to check on the boys.

■ Having examined the allegedly undisputed facts related to official immunity, we find there are genuine issues of material fact regarding whether Defendants are entitled to the defense of official immunity. We will now focus on the allegedly undisputed facts necessary to support Hargrove, Penning, and Sievers' defense that they were immune under the Coverdell act.

Section 6735 of the Coverdell Act provides, in pertinent part:

Except as provided in subsection (b) of this section, no teacher in a school shall be liable for harm caused by an act or omission of the teacher on behalf of the school if—

(1) the teacher was acting within the scope of the teacher's employment or responsibilities to a school or governmental entity;

(2) the actions of the teacher were carried out in conformity with Federal, State, and local laws (including rules and regulations) in furtherance of efforts to control, discipline, expel, or suspend a student or maintain order or control in the classroom or school.

Section 167.117.1 provides, in pertinent part:

In any instance when any person is believed to have committed an act which if committed by an adult would be assault in the first, second or third degree, sexual assault, or deviate sexual assault against a pupil or school employee, while on school property, including a school bus in service on behalf of the district, or while involved in school activities, the principal shall immediately report such incident to the appropriate local law enforcement agency and to the superintendent.

As an initial matter, we note Plaintiff asserts Section 167.117.1 is a state law in furtherance of efforts to control, discipline, expel, or suspend a student or maintain order or control in the classroom or school. Thus, as such, if a teacher conforms his or her behavior to it, he or she can claim immunity under the Coverdell Act.

However, Defendants deny that Section 167.117.1 is a state law in furtherance of efforts to control, discipline, expel, or suspend a student or maintain order or control in the classroom or school. Defendants assert it is merely a reporting statute specifying how and to whom certain acts are to be reported. Thus, the import of Defendants' denial is that they did not have to comport their behavior to

Section 167.117.1 in order to claim immunity under the Coverdell Act. While Plaintiff contends this disagreement constitutes a genuine dispute of material fact regarding whether Defendants had to abide by Section 167.117.1 to claim immunity under the Coverdell Act, we find this dispute actually involves a question of law, that is, the proper categorization of Section 167.117.1 as a state law in furtherance of efforts to control, discipline, expel, or suspend a student or maintain order or control in the classroom or school or not. We note neither party has cited to any authority to support their assertion. Further, we could find no authority that previously addressed this issue. However, based upon a plain reading of the statute, our determination of that issue of law is that Section 167.117.1 is a state law in furtherance of efforts to control, discipline, expel, or suspend a student or maintain order or control in the classroom or school. In other words, Section 167.117.1 is more than a mere reporting statute as Defendants contend.

Therefore, Defendants were required to follow the requirements of Section 167.117.1 to be entitled to immunity under the Coverdell Act. Plaintiff alleges there were numerous disputed facts pertaining to whether Sievers carried out her duty under Section 167.117.1 to "immediately" report the incident to law enforcement. Plaintiff alleges the following disputed facts to support her claim that Sievers did not immediately report the incident to law enforcement[5]: (1) Plaintiff denies the incident occurred at the end of the day and that Sievers had little time left to interview the two students accused of assaulting Plaintiff; (2) Plaintiff denies Sievers contacted Officer Benning "immediately" after interviewing two male students ac-

cused of assault; (3) Plaintiff denies Sievers called Officer Benning approximately thirty minutes after the assault took place. In her denial, Plaintiff asserts it took much longer for Sievers to notify Officer Benning; (4) Plaintiff denies Sievers contacted Officer Benning after she had a chance to gather information regarding the alleged assault. In her denial, Plaintiff asserts Sievers took much longer to notify Officer Benning; (5) Plaintiff denies Sievers did not have an opportunity to contact Plaintiff's parents because the parents were at the school as she was notifying the Hazelwood Police of the alleged assault. In her denial, Plaintiff again asserts Sievers did not call the police for a long time; (6) Plaintiff notes Defendants deny that Sievers had notified the police as of 3:25 p.m. In their denial, Defendants assert Sievers contacted the police at 3:07 p.m.; (7) Plaintiff notes Defendants deny that Sievers had not contacted the police through Officer Benning until 4:41 p.m. In their denial, Defendants again assert Sievers contacted the police at 3:07 p.m.; and (8) Plaintiff also notes Defendants deny that Sievers did not "immediately" report Plaintiff's assault to the police after learning about it from interviewing Plaintiff and watching the incident on video. In their denial, Defendants again assert Sievers contacted the police at 3:07 p.m.

The above disputed facts demonstrate there were genuine issues of material fact regarding whether Defendants complied with Section 167.117.1. The resolution of these issues of facts bear upon whether Defendants are entitled to immunity under the Coverdell Act.

Therefore, because we find there were genuine disputes of material fact regarding whether Defendants were entitled to immunity under the doctrine of official immu-

---

**5.** Plaintiffs relies on the deposition testimony of Plaintiff, Sievers, and Dr. Klouse and the affidavit of Plaintiff's mother to support these denials.

nity or under the Coverdell Act, we find the trial court erred in granting summary judgment in favor of Hargrove, Penning, and Sievers on Counts II, III, IV.

Having found there were genuine issues of material fact in Plaintiff's first two points, we need not address Plaintiff's third, fourth, and fifth points.

The judgment of the trial court is reversed and remanded.

ROBERT M. CLAYTON III, C.J. and SHERRI B. SULLIVAN, J., concur.