

# In the Missouri Court of Appeals Eastern District

## DIVISION ONE

EUGENE MOORE and
WANDA WAGNER,

    Appellants,

vs.

CITY OF O'FALLON, MISSOURI, et al.,

    Respondents.

)
)
)
)
)
)
)
)
)
)
)

No. ED111523

Appeal from the Circuit Court
of Saint Charles County
1911-CC01047

Honorable Rebeca Navarro-McKelvey

Filed: December 19, 2023

Eugene Moore and Wanda Wagner (collectively "Plaintiffs") appeal the trial court's

grant of summary judgment entered in favor of defendants City of O'Fallon, Missouri, and

Officers Scott Weeke, Dalton Koch, Keith Lewis, and Michael Manzella (collectively

"Defendants") on Plaintiffs' negligence and recklessness claims. We affirm.

## I.    BACKGROUND

Viewing the record in the light most favorable to Plaintiffs, the party against whom

summary judgment was entered, the facts relevant to this appeal are as follows.[1]

---

[1] In determining whether summary judgment is appropriate, our Court must view the record in the light most favorable to the non-movant, accepting all reasonable inferences in favor of that party as true. *B.B. v. Methodist Church of Shelbina, Missouri*, 541 S.W.3d 644, 650 (Mo. App. E.D. 2017). The facts set out in this case are taken from Plaintiffs' admissions to statements of material facts and from other materials accompanying Defendants' motions for summary judgment, and the parties' responses and replies thereto. *See id*.

**A.      The Relevant Facts in the Summary Judgment Record**

On November 1, 2014, the O'Fallon Police Department received a call at approximately 7:20 p.m. reporting a stolen truck from an apartment complex in O'Fallon, Missouri.  In response to the call, Officer Weeke initially positioned his patrol car on the shoulder of eastbound Highway 70, just before the exit for Highway 79, in an attempt to locate the reportedly stolen truck.  After spotting and following a vehicle matching the truck's description and determining it was not the correct truck, the officer again pulled to the shoulder of Highway 70 just before the Mid Rivers exit.  Shortly thereafter, Officer Weeke spotted another vehicle matching the truck's description, followed it, and determined the truck's license plate number matched the plate number of the truck police were searching for.  The officer then activated his lights and siren to initiate a traffic stop of the truck near the Cave Springs exit on Highway 70.

The truck's driver ("Suspect") initially complied with the traffic stop and pulled over to the shoulder of the highway.  However, after Officer Weeke exited his patrol car, Suspect put the truck in drive and quickly accelerated away from the traffic stop.  The officer then returned to his patrol car and began to pursue the truck with his lights and siren activated.  As the pursuit began, Officer Weeke lost sight of the truck as Suspect drove away at a speed of approximately eighty to ninety miles per hour.  After regaining sight of the truck roughly three-quarters of a mile later, the officer saw the truck weaving erratically, and Suspect turned off the truck's lights while driving under the Zumbehl Road overpass.  Officer Weeke lost sight of the truck shortly thereafter, and he testified that he decided to terminate the pursuit due to Suspect's erratic driving and because the truck's headlights were turned off.  The officer was at least twenty car lengths behind the truck when he lost sight of it, and the distance covered during the pursuit between the Cave Springs and Zumbehl exits was approximately 1.5 miles.  Additionally, shortly

2

after Officer Weeke lost sight of Suspect, he turned off his siren and slowed his patrol car to about sixty-five miles per hour.

As Officer Weeke continued traveling on the highway, he again spotted the truck on an exit ramp and realized Suspect had been involved in an accident. The officer notified dispatch of the accident and continued to the next exit in order to circle back and render aid. At the time of the accident, Officers Koch, Lewis, and Manzella were following behind Officer Weeke and had not yet reached his location. After the accident occurred, the officers following behind were given permission to proceed to the scene to render aid.

## B. The Relevant Procedural Posture

Plaintiffs subsequently filed a petition against Defendants alleging Plaintiffs suffered severe injuries resulting from a collision between their vehicle and the truck driven by Suspect as he attempted to evade police.[2] Plaintiffs asserted a negligence claim against defendant City of O'Fallon, Missouri ("City") alleging the City was liable for the injuries suffered by Plaintiffs, which were a "direct and proximate result" of the allegedly negligent pursuit of Suspect initiated by the City's police officers. Plaintiffs also asserted a recklessness claim against defendant Officers Weeke, Koch, Lewis, and Manzella (collectively "Officers") for their respective roles in the pursuit. The petition further claimed the Officers were not protected by official immunity, as their actions "were ministerial in nature" because they were required to strictly obey the City's police pursuit policy, and if the Officers' actions "[were] deemed discretionary," then their "conduct [rose] to the level of willfully wrong or done with malice or corruption." Finally, Plaintiffs claimed the public duty doctrine did not protect the Officers because they "had a

---

[2] Plaintiffs' petition initially asserted five total counts. However, the trial court granted a motion to dismiss on two of these counts, and another count was voluntarily dismissed by Plaintiffs. The three dismissed counts are not at issue on appeal.

3

specific duty to Plaintiffs, whose injuries as bystanders to the police pursuit were foreseeable as a result of the [Officers'] conduct."

After Defendants filed their answers, they filed a motion for summary judgment with an accompanying statement of material facts. Defendants argued in their motion for summary judgment that, *inter alia*, the City was entitled to judgment as a matter of law on the negligence count because its Officers "were not the proximate cause of Plaintiffs' injuries," and the Officers were protected from the recklessness count by both official immunity and the public duty doctrine. Plaintiffs then filed responses to Defendants' motion for summary judgment and Defendants' statement of material facts, along with a statement of additional material facts. Thereafter, Defendants filed a reply in support of their motion for summary judgment, a reply to Plaintiffs' response to their statement of material facts, and a response to Plaintiffs' statement of additional material facts.

The trial court granted summary judgment in favor of Defendants. Specifically, the court found the City was entitled to summary judgment because its Officers were not the proximate cause of Plaintiffs' injuries, and the Officers were entitled to official immunity and protected from liability under the public duty doctrine. This appeal followed.

## II.    DISCUSSION

Plaintiffs raise two points on appeal. In their first point on appeal, Plaintiffs argue the trial court erred in granting summary judgment in favor of the City as to Plaintiffs' negligence claim. Plaintiffs' second point on appeal contends the trial court erred in granting summary judgment in favor of the Officers on Plaintiffs' recklessness claim.

### A.    Standard of Review

Our Court's review of a trial court's decision granting summary judgment is *de novo*. *B.B. v. Methodist Church of Shelbina, Missouri*, 541 S.W.3d 644, 650 (Mo. App. E.D. 2017).

4

Summary judgment is only proper when the movant establishes there are no genuine issues as to the material facts and the movant is entitled to judgment as a matter of law. *Id*. Our Court must view the record in the light most favorable to the non-movant, accepting all reasonable inferences in favor of that party as true. *Id*. "We accept facts contained in affidavits or otherwise produced in support of the motion for summary judgment as true unless they are contradicted by the non-movant's response to the motion." *Id*. (citation omitted). A defendant establishes a right to judgment as a matter of law by showing: (1) facts that negate any one of the elements of the plaintiff's cause of action; (2) the plaintiff, after an adequate period of discovery, has not and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the plaintiff's elements; or (3) there is no genuine dispute as to the existence of each of the facts necessary to support the defendant's properly-pleaded affirmative defense. *Id*.

**B.      Whether the Trial Court Erred in Granting Summary Judgment for the City**

Plaintiffs' first point on appeal argues the trial court erred in granting summary judgment in favor of the City and finding the City's Officers were not the proximate cause of Plaintiffs' injuries. Specifically, Plaintiffs argue a jury could reasonably find proximate causation from the Officers' alleged violations of either a Missouri statute or police department policy.[3] We disagree.

---

[3] Plaintiffs also argue they alleged sufficient facts to support a finding of proximate cause because Suspect was driving safely, obeying the speed limit, "and not posing any threat to public safety" prior to the traffic stop by Officer Weeke. However, Suspect's decision to alter his driving in reaction to being engaged by police officers, standing alone, does not establish proximate causation, i.e., that the accident was the "natural and probable consequence of the defendant's negligence." *Stanley v. City of Independence*, 995 S.W.2d 485, 488 (Mo. banc 1999); *see, e.g., id*. at 486, 488 (holding a pursuing officer was not the proximate cause of an accident when the suspect was initially sitting at a stoplight prior to an attempted traffic stop and pursuit by the officer); *Frazier v. City of Kansas*, 467 S.W.3d 327, 331, 337-38 (Mo. App. W.D. 2015) (holding the pursuing officer was not the proximate cause of an accident after a pursuit began when the suspect sped off as officers approached him while he sat in a stolen truck). Accordingly, Suspect's decision to begin driving dangerously in an attempt to evade police only serves to further support a conclusion that *Suspect's* actions, rather than the actions of the Officers, were the proximate cause of Plaintiffs' injuries. *Stanley*, 995 S.W.2d at 488; *Frazier*, 467 S.W.3d at 337-38.

## 1.    General Law and Plaintiffs' Arguments

A claim for negligence requires a plaintiff to prove: (1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty by the defendant; and (3) the breach by the defendant was a proximate cause of the plaintiff's injury. *Stanley v. City of Independence*, 995 S.W.2d 485, 487 (Mo. banc 1999). Behavior by a public employee that violates applicable statutes or policies can constitute evidence of negligent conduct. *See Southers v. City of Farmington*, 263 S.W.3d 603, 617 (Mo. banc 2008). However, to recover damages on a negligence claim, a plaintiff must prove not only negligent conduct on the part of the defendant but must also satisfy the proximate cause element by proving the plaintiff's injury was the "natural and probable consequence" of the defendant's negligent conduct. *Stanley*, 995 S.W.2d at 488. Further, a plaintiff cannot prove proximate cause through "pure speculation and conjecture." *Id*.

On appeal, Plaintiffs argue they established a factual basis for proximate cause by alleging that the City's Officers initiated a pursuit: (1) from outside of their jurisdiction, in violation of Missouri law; and (2) without a reasonable justification, in violation of the City's Police Directive 11.2 regarding vehicle pursuits ("Pursuit Policy"). Assuming, *arguendo* and for purposes of this appeal only, that Plaintiffs' allegations of statutory and policy violations are true, such violations could constitute evidence of negligent conduct by the City's Officers. *See Southers*, 263 S.W.3d at 617. However, to succeed on their negligence claim, Plaintiffs must also prove the Officers' allegedly negligent conduct was a proximate cause of the collision between Plaintiffs' vehicle and the truck driven by Suspect. *See Stanley*, 995 S.W.2d at 488. In light of this burden, Plaintiffs have failed to distinguish the facts of this case from a line of factually similar police pursuit cases holding officers were not the proximate cause of a plaintiff's injuries, regardless of any allegedly negligent conduct involving statutory or policy violations. *See, e.g., id*. at 487-88 (noting the plaintiffs' allegations of negligent conduct, which

6

included statutory and policy violations by the city's police officer, and holding there was no factual basis for finding proximate cause).

### 2. Prior Missouri Cases Finding Police Officers Involved in a Pursuit Were Not the Proximate Cause of a Collision

In *Stanley*, an officer in a marked patrol car identified a van matching the description of a vehicle used in a robbery thirty minutes earlier. *Id*. at 486. The officer pulled behind the van while it was stopped at a traffic light, then initiated a traffic stop once the light changed and the van cleared the intersection. *Id*. The suspect then fled and the officer pursued with his lights and siren activated, with the van reaching speeds up to seventy miles per hour in a residential area. *Id*. The pursuit lasted forty-five seconds and ended when the fleeing van collided with the decedents while the officer was roughly 191 feet behind the van. *Id*. The plaintiffs alleged the officer acted negligently by, *inter alia*, violating Missouri law and police department policy. *Id*. at 487. In affirming the trial court's grant of summary judgment in favor of the officer and his employer, the Missouri Supreme Court held the officer's conduct was not a proximate cause of the collision. *Id*. at 486-88. Further, the Court stated there was "no factual basis to support a finding of proximate cause" because only speculation could lead to a conclusion that the officer caused the collision. *Id*. at 488.

The Court in *Dilley v. Valentine*, 401 S.W.3d 544 (Mo. App. W.D. 2013), followed the *Stanley* holding based on similar facts involving a collision between the plaintiff and a suspect pursued by police. *Dilley*, 401 S.W.3d at 546-49. In *Dilley*, the officer pursued a fleeing suspect in a marked police car with the lights and siren activated. *Id*. at 549. When an accident involving the suspect occurred, the officer was approximately 120 feet behind suspect's vehicle. *Id*. The pursuit lasted less than 120 seconds and reached speeds up to fifty-five miles per hour. *Id*. As in *Stanley*, the *Dilley* Court upheld summary judgment in favor of the officer and his

7

employer, finding no factual basis to support the proximate cause element of a negligence claim. *Id*.

Similar facts again led to the same conclusion by the Court in *Frazier v. City of Kansas*, 467 S.W.3d 327 (Mo. App. W.D. 2015). In *Frazier*, a pursuit began after a suspect sped away when officers approached him as he sat in a stolen truck in a parking lot. *Id*. at 331. An officer pursued the suspect for approximately 120 seconds with his lights and siren activated, and the pursuit ended with a collision between the plaintiff and the fleeing suspect. *Id*. at 332, 335. The lead officer remained several hundred feet behind the suspect throughout the pursuit. *Id*. at 332. The plaintiff in *Frazier* attempted to distinguish the facts in that case from the prior holdings in *Stanley* and *Dilley* by arguing, *inter alia*, that the pursuit violated police department policies which therefore made the defendants' actions negligent and reckless. *Frazier*, 467 S.W.3d at 336-37. The *Frazier* Court upheld partial summary judgment in favor of the officer and his employer, finding the Supreme Court's holding in *Stanley* controlling as to proximate cause and the plaintiff's negligence claims. *Frazier*, 467 S.W.3d at 331, 337-38.

*Throneberry v. Missouri State Highway Patrol*, 526 S.W.3d 198 (Mo. App. W.D. 2017), cited by the trial court's decision granting summary judgment in this case, reached the same conclusion as *Stanley*, *Dilley*, and *Frazier* regarding proximate cause. *Throneberry*, 526 S.W.3d at 215. The police pursuit in *Throneberry* lasted 120 seconds, the officer's emergency lights and siren were activated, and the pursuit reached speeds up to ninety-one miles per hour before ending in a collision between the decedent and the fleeing suspect. *Id*. at 201-02. The officer's patrol car made no physical contact with the suspect's vehicle. *Id*. at 210. The Court held the facts in *Throneberry* were "materially indistinguishable from those in *Stanley* and *Dilley*" and accordingly, the element of proximate cause could not be established as a matter of law. *Throneberry*, 526 S.W.3d at 210, 215.

Most recently, in *Harris v. City of St. Louis*, 658 S.W.3d 49 (Mo. App. E.D. 2022), this Court followed *Stanley*, *Dilley*, *Frazier*, and *Throneberry* under a similar factual scenario and held that officers who engaged in pursuing a suspect did not proximately cause a collision between the injured parties and the fleeing suspect. *Harris*, 658 S.W.3d at 53-57. The officers in *Harris* pursued a suspect at high rates of speed with their lights and sirens activated. *Id*. at 50-51, 55. Importantly, the officer closest to the accident between the suspect and the injured parties was far enough away at the time of the collision that he did not see it occur. *Id*. at 54-55. In ultimately holding that the plaintiffs failed to establish proximate cause as a matter of law, this Court noted the importance of the nearest officer's location relative to the collision, because it rendered the plaintiffs' claim that the officers proximately caused the accident "even more speculative than in *Stanley*." *Harris*, 658 S.W.3d at 54-55, 57.

### 3. Analysis and Conclusion as to Point One on Appeal

The operative facts of this case are "materially indistinguishable" from *Stanley*, *Dilley*, *Frazier*, *Throneberry*, and *Harris*. *See Throneberry*, 526 S.W.3d at 210. The pursuit in this case was short in duration as it covered a distance of roughly 1.5 miles at speeds of approximately eighty to ninety miles per hour on an interstate highway. The lead officer, Officer Weeke, had his lights and siren activated up until shortly after he lost sight of Suspect and the officer reduced his speed to approximately sixty-five miles per hour. At the moment the accident between Suspect and Plaintiffs occurred, the nearest officer was far enough behind Suspect to have lost sight of the truck entirely, making proximate causation "even more speculative" than *Stanley* and other police pursuit cases summarized above. *See Harris*, 658 S.W.3d at 54-55, 57.

Plaintiffs base their arguments for a finding of proximate cause almost entirely on their allegations regarding statutory and policy violations, which, as mentioned above, could at best constitute evidence of negligent conduct by the City's Officers. *See Southers*, 263 S.W.3d at

9

617. But to recover damages on a negligence claim, Plaintiffs must also prove the Officers' allegedly negligent conduct was a proximate cause of Plaintiffs' injuries. *Stanley*, 995 S.W.2d at 488. As in *Stanley* and the subsequent line of Missouri cases above, Plaintiffs have failed to allege facts sufficient to allow the trier of fact to find that the City's Officers' conduct proximately caused Plaintiffs' injuries. *See, e.g., id*. at 487-88; *see also B.B.*, 541 S.W.3d at 650. Any argument that the Officers' conduct during the pursuit in this case caused Plaintiffs' collision with Suspect is supported only by "pure speculation and conjecture," and thus cannot form the basis for proximate cause. *Stanley*, 995 S.W.2d at 488. Accordingly, the trial court did not err in granting summary judgment in favor of the City on Plaintiffs' negligence claim. Point one is denied.

## C. Whether the Trial Court Erred in Granting Summary Judgment for the Officers

Plaintiffs' second and final point on appeal contends the trial court erred in granting summary judgment in favor of the Officers on Plaintiffs' recklessness claim. Specifically, Plaintiffs contend the trial court erred in finding the Officers were shielded by both official immunity and the public duty doctrine because these doctrines do not apply to "ministerial duties which admit of no discretion" or intentional torts.

### 1. General Law

"Recklessness is an aggravated form of negligence." *Fowler v. Phillips*, 504 S.W.3d 107, 110 (Mo. App. E.D. 2016). As with negligence, a primary element of recklessness is whether the defendant owed a personal duty of care to the plaintiff, and the analysis for the existence of that duty is the same in either instance. *Id*. Missouri recognizes recklessness as an intentional tort. *Hatch v. V.P. Fair Foundation, Inc.*, 990 S.W.2d 126, 139 (Mo. App. E.D. 1999).

Although both official immunity and the public duty doctrine similarly operate to protect public officials from liability for allegedly negligent conduct, they are separate and

10

distinguishable doctrines under Missouri Law. *Southers*, 263 S.W.3d at 610-12. Official immunity is an affirmative defense which protects officials from liability without destroying the underlying tort, while the public duty doctrine leaves the plaintiff unable to prove a negligence or recklessness claim by negating the duty element. *Id*. at 612; *Throneberry*, 526 S.W.3d at 206; *see also Fowler*, 504 S.W.3d at 109-10.

### a. Official Immunity

Pursuant to the official immunity doctrine, public officials sued in their individual capacities are protected from liability for allegedly negligent conduct committed during the performance of discretionary acts in the course of their official duties, if the official acted without malice. *State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 190 (Mo. banc 2019); *Southers*, 263 S.W.3d at 610. The purpose of the doctrine is to provide protection for public employees who, in the face of limited resources and imperfect information, are required to exercise judgment in the performance of their official duties. *Southers*, 263 S.W.3d at 611.

In ascertaining whether the act of a public employee is protected by the doctrine of official immunity, a court must determine whether the act was discretionary or ministerial. *Richardson v. Burrow*, 366 S.W.3d 552, 554 (Mo. App. E.D. 2012). A discretionary act, which requires the exercise of judgment and discretion in determining how or whether a particular act should be done, is protected. *Id*. A ministerial act, amounting to a clerical duty to perform a routine and mundane task pursuant to a mandate with no exercise of judgment involved, is not protected. *Id*.; *Alsup*, 588 S.W.3d at 191.

A police officer's conduct during the pursuit of a suspect in the course of performing official duties involves discretionary decisions which require professional expertise and judgment, and the doctrine of official immunity is intended to protect these types of decisions. *Southers*, 263 S.W.3d at 607-08, 619. However, even discretionary acts "will not be protected

11

by official immunity if the conduct is willfully wrong or done with malice or corruption." *Id*. at 610.

> b. **The Public Duty Doctrine**

Under the public duty doctrine, a public employee cannot be found civilly liable for breaching a duty owed to the general public as opposed to a duty owed to a particular individual. *Id*. at 611. Rather than operating as an affirmative defense, the public duty doctrine delineates the legal duty owed to the plaintiff by a public employee. *Id*. at 612. Application of the public duty doctrine negates the duty element of a negligence or recklessness claim, thereby eliminating any cause of action that may arise from injuries to the plaintiff which occurred due to an alleged breach of duty owed to the community as a whole. *Id*.; *Throneberry*, 526 S.W.3d at 206; *see also Fowler*, 504 S.W.3d at 109-10. The Missouri Supreme Court has held that discretionary police officer actions during the pursuit of a suspect arise from "duties owed to the public generally," and are thus protected by the public duty doctrine unless an exception applies. *Southers*, 263 S.W.3d at 619-20 (citing *Jungerman v. City of Raytown*, 925 S.W.2d 202, 205 (Mo. banc 1996)) (abrogated on other grounds by *Southers*, 263 S.W.3d at 612-14, 614 n.13).

A public employee will not be shielded by the public duty doctrine when there is a "breach of ministerial duties in which an injured party had a special, direct, and distinctive interest." *Id*. at 611-12 (internal quotations and citation omitted). Additionally, as with the doctrine of official immunity, the public duty doctrine does not protect public employees from acts done "in bad faith or with malice." *Id*. at 612 (quoting *Jackson v. City of Wentzville*, 844 S.W.2d 585, 588 (Mo. App. E.D. 1993)) (abrogated on other grounds by *Southers*, 263 S.W.3d at 612-14, 614 n.13).

12

## 2.    Analysis

Because Plaintiffs appear to advance the same arguments against the application of both official immunity and the public duty doctrine to their claim, we will analyze these doctrines together.  In this case, it is uncontroverted that the Officers were public officials working within the scope of their official employment with the City Police Department, as required for application of official immunity.  *See State ex rel. Barron v. Beger*, 655 S.W.3d 356, 361 (Mo. banc 2022).  At issue are Plaintiffs' claims that: (1) the Officers' actions during the pursuit of Suspect are not subject to official immunity and the public duty doctrine because they were ministerial in nature;[4] and (2) an exception to either doctrine exists for intentional torts.

Plaintiffs first contend that neither official immunity nor the public duty doctrine should protect the Officers from a recklessness claim because the pursuit at issue required the performance of "ministerial duties which admit of no discretion on the part of the individual officer."  However, Plaintiffs also quote repeatedly from the City's Pursuit Policy in their brief on appeal and in their statement of additional material facts.  As the Pursuit Policy clearly states, "[t]he responsibility for the decision to initiate a pursuit rests with the individual officer."  The Pursuit Policy also lists twelve factors which "shall be considered [by an officer] when determining whether any pursuit should be initiated, continued, or terminated."  Requiring an officer to consider multiple related factors, assess continually changing circumstances, and use his or her judgment in deciding whether to initiate, continue, or terminate a pursuit constitutes the very "essence of a discretionary act."  *Throneberry*, 526 S.W.3d at 204.  Furthermore, the decisions made by the Officers during the pursuit at issue in this case were subject to discretion

---

[4] We note that Plaintiffs have made no argument on appeal regarding any duty owed by the Officers in which the Plaintiffs "had a special, direct, and distinctive interest," as required under this exception to the public duty doctrine. *See Southers*, 263 S.W.3d at 611-12, 612 n.10 (internal quotations and citation omitted) (citing, *inter alia*, *Jungerman*, 925 S.W.2d at 205) (abrogated on other grounds by *Southers*, 263 S.W.3d at 612-14, 614 n.13). Therefore, Plaintiffs' argument against application of the public duty doctrine would fail regardless of whether the Officers' actions were ministerial in nature. *See id*.

13

because there was "room for variation," not only in how the pursuit was executed, but also in deciding whether to initiate or end the pursuit altogether. *Barron*, 655 S.W.3d at 361 (citation omitted). The pursuit of Suspect by the Officers was, by definition, not a ministerial act. *See id*. Accordingly, Plaintiffs' contention that neither official immunity nor the public duty doctrine should apply because the Officers were performing ministerial tasks during the pursuit is without merit.

Additionally, Plaintiffs contend that neither official immunity nor the public duty doctrine should protect the Officers against a claim of recklessness because "Missouri courts have clearly held that the doctrines . . . only shield[] . . . officials from alleged acts of negligence but not intentional torts." Plaintiffs misstate the law. The exceptions to the doctrines referenced by Plaintiffs exist for conduct by a public official which is "willfully wrong or done with malice or corruption." *Southers*, 263 S.W.3d at 610, 612. However, "[t]he mere assertion of recklessness as a separate cause of action from negligence is insufficient to implicate [any of these exceptions]" to either official immunity or the public duty doctrine. *Throneberry*, 526 S.W.3d at 204, 206. Although Plaintiffs' petition asserted separate claims for negligence and the intentional tort of recklessness, the summary judgment record in this case lacks a sufficient "allegation of a malicious motive or purpose or of conscious wrongdoing" to trigger any exception to the application of official immunity or the public duty doctrine.[5] *Id*. at 204 (quoting *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 447 (Mo. banc 1986)). In sum, Plaintiffs cannot trigger an exception to either doctrine through the mere allegation of an intentional tort when they have failed to allege any facts supporting bad faith or malice. *See id*. Therefore, both

---

[5] Plaintiffs' petition made the conclusory statement that if the Officers' actions "are deemed discretionary, [then their] conduct rises to the level of willfully wrong or done with malice or corruption." However, Plaintiffs alleged no facts in support of this statement "from which it could reasonably be inferred that [the Officers] acted in bad faith or from an improper or wrongful motive." *Throneberry*, 526 S.W.3d at 205 (citation omitted).

14

official immunity and the public duty doctrine shield the Officers in this case from liability for alleged recklessness. *See id*. at 203-06 (similarly holding).

3. **Conclusion as to Point Two on Appeal**

Based on the foregoing, because the Officers' conduct during their pursuit of Suspect was discretionary in nature and Plaintiffs have not sufficiently alleged bad faith or malice, the Officers are protected by both official immunity and the public duty doctrine. There is no genuine dispute as to the facts necessary to support the Officers' properly-pleaded assertion of official immunity. *See B.B.*, 541 S.W.3d at 650. Additionally, the undisputed facts of this case support application of the public duty doctrine by negating the duty element necessary to support a recklessness claim. *See id*.; *Throneberry*, 526 S.W.3d at 206; *see also Fowler*, 504 S.W.3d at 109-10. Accordingly, the trial court did not err in granting summary judgment in the Officers' favor on Plaintiffs' recklessness claim. Point two is denied.

## III. CONCLUSION

The trial court's grant of summary judgment on Plaintiffs' negligence claim against the City and Plaintiff's recklessness claim against the Officers is affirmed.


_____
ROBERT M. CLAYTON III, Presiding Judge

Philip M. Hess, J., and
Cristian M. Stevens, J., concur.

15